[No. B125605. Second Dist., Div. Three. Jan 31, 2000.]

SANDY LANG et al., Plaintiffs and Respondents, v.
ALAN HOCHMAN et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV(C) and (D).

## COUNSEL

Shaub & Williams, David R. Shaub and Edward E. Vaill for Defendants and Appellants.

Wasserman, Comden & Casselman and David B. Casselman for Plaintiffs and Respondents.

## OPINION

## KITCHING, J.—

### I

### INTRODUCTION

Code of Civil Procedure section 473, subdivision (b)[1] provides mandatory relief from default or dismissal on the basis of an attorney's affidavit of fault "unless the court finds that the default or dismissal was not in fact *caused* by the attorney's mistake, inadvertence, surprise, or neglect." (Italics added.) The issue in this appeal is whether section 473, subdivision (b) relief applies when the attorney *and* the client are *both* responsible for discovery misconduct that results in a default judgment or dismissal of the action. We find that section 473, subdivision (b) relief is available only when the attorney is *solely* responsible for the misconduct.

In this business dispute, the trial court imposed terminating sanctions and entered a $22 million default judgment after defendants failed to comply with *three* discovery orders. Alan Hochman, Edward Moiselle and Moiselle, Dorsey & Hochman Advertising Agency (collectively referred to as MDH) appeal from the entry of the default judgment, and the trial court's denial of the section 473 motion for relief.

In the published portion of this opinion, we find that the trial court did not abuse its discretion in ordering terminating sanctions. We further find that since MDH, along with their attorney, knowingly failed to turn over documents in response to numerous discovery requests and court orders, the trial court properly denied MDH relief under the mandatory provision of section 473. In the unpublished portion of this opinion, we deal with other issues raised by MDH. We affirm the judgment of the trial court.

### II

### FACTUAL AND PROCEDURAL BACKGROUND

Sandy Lang and Peter Albertsson (collectively referred to as Lang) entered into an oral agreement with Alan Hochman and Edward Moiselle to market a patented instructional aid for golfers, called "The Secret." The terms of the agreement included the creation of The Secret, Inc., and The Secret, a California Limited partnership. Hochman and Moiselle's advertising agency, Moiselle, Dorsey & Hochman Advertising Agency, acted as the

---

[1]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

agency on behalf of The Secret. A dispute arose over the alleged misappropriation of funds. Lang asserted that MDH stole money from The Secret, Inc., and The Secret, L.P.

On March 6, 1997, Lang filed a complaint against MDH (No. BC167051). In an amended complaint, Lang alleged causes of action against MDH for, inter alia, fraud, breach of fiduciary duty, and breach of oral contract, and prayed for, inter alia, general damages according to proof, punitive damages, and attorney fees, costs and prejudgment interest. MDH filed a general denial, asserting various affirmative defenses, and cross-complained for statutory and contractual indemnity.

## A. Discovery Dispute

### 1. Demand for Production of Documents

On or about May 28, 1997, Lang served on MDH a second demand for inspection and production of document. The demand included one item, number 18, which stated: "All accounting and financial records of MDH AGENCY, including but not limited to ledgers, accounts receivable, accounts payable, receipts, invoices, charge account statements, banking statements, consulting fees, advertising commissions, service fees, expense reimbursements, canceled checks, salaries, loans, agency fees to clients, mark-ups to clients and other financial transactions with THE SECRET, INC. or THE SECRET, a California Limited Partnership."

The documents were due to be produced on or before June 27, 1997. MDH did not timely respond. MDH requested an extension of time, which Lang granted to July 25, 1997. On that date, MDH mailed to Lang some documents, but without a cover letter, a written response, or a verification. On July 30, 1997, MDH stated that it had produced all responsive documents. However, Lang's investigation disclosed MDH had not produced all requested documents.

### 2. Motion to Compel

On August 4, 1997, Lang filed a motion to compel, and a request for sanctions. Lang contended that Hochman admitted at his deposition that he and Moiselle intermingled the funds of The Secret, Inc., and the advertising agency (Moiselle, Dorsey, & Hochman Advertising Agency). Lang stated: "Plaintiffs also have reason to believe that defendants have or will falsify the

MDH Agency books and records in an effort to prevent plaintiffs from obtaining evidence of the extent of the fraud defendants have perpetrated. These co-mingled records contain the most central evidence regarding when and how defendants paid themselves or sought reimbursement from the accounts of THE SECRET by intermingling them with the expenses of their wholly owned agency. [¶] On May 23, 1997, plaintiffs served defendant MDH AGENCY with a demand for production of <u>all of its financial books and ledgers, including but not limited to</u> financial records expressly concerning THE SECRET. Only the 1 1/2 years of co-mingling are at issue. Intermingling of the recorded transactions will require careful analysis to unravel what has been done." (Underscoring in original.)

MDH opposed the motion to compel on grounds that MDH had fully complied with Lang's request for production of documents. MDH stated: "This inspection demand requests all documents pertaining to financial transactions between MDH with The Secret, Inc. or The Secret, a California Limited Partnership. These documents have been provided." MDH argued that Lang's interpretation of document request number 18 to include all of the advertising agency's financial and accounting records was wrong because all of those records were not relevant to the litigation between MDH and Lang. MDH stated: "The 'comingling' of funds, which is not conceded as suggested, has nothing to do with MDH being able to provide documents to reflect the work they performed for The Secret, Inc. and the money received for the same."

### 3. *Reference to Referee*

On August 13, 1997, the trial court ordered all discovery disputes referred to a discovery referee, Retired Judge George M. Dell (Judge Dell).

#### *First Report by Referee*

On or about September 15, 1997, after a hearing, Judge Dell granted Lang's motion to compel and ordered MDH to produce "all of the MOISELLE/ DORSEY/HOCHMAN accounting and financial records, not limited to simply records which identify THE SECRET, INC."

### 4. *Trial Court's Ruling*

On September 23, 1997, the trial court adopted Judge Dell's recommendation to grant Lang's motion to compel.

### 5. *Motion for Sanctions*

On September 24, 1997, Lang filed a motion for terminating, evidence, issue and monetary sanctions against MDH and counsel, to be heard on

October 20, 1997. Lang stated: "The motion is made on the following grounds. Defendants have failed and refused to comply with the Discovery Act, their own multiple oral and verbal agreements with counsel for plaintiffs, their written agreement of August 18, 1997, before the mediator and this court, their September 4, 1997, promise to the Discovery Referee, the Discovery Referee's recommendations of September 4 and 14, 1997, and this court's subsequent order to produce the MDH AGENCY accounting and financial books and records in response to plaintiffs' second demand for production of documents . . . ."

MDH opposed the motion on grounds it had honored agreements with Lang as well as the court's order. It stated that it provided the requested documents on July 25, 1997, September 26, 1997, October 7, 8 and 10, 1997, and/or was conducting a diligent search for remaining documents. MDH explained that "[o]nly when a dispute arose as to the literal interpretation of Plaintiffs' request did the Defendants challenge the production of any further discovery. [¶] The parties had a bona fide discovery dispute which was resolved by Judge Dell. Defendants have complied with Judge Dell's order and produced the requested documents."

In reply, Lang argued as follows: All of the documents had not been produced. On September 26, 1997, MDH produced six inches of documents, with a claim that "this . . . constituted virtually all of the remaining responsive documents." This was not true because on October 7, 1997, MDH produced another six inches of documents, and on October 9, 1997, MDH produced three more pages of documents. On October 9, 1997, Lang wrote MDH that there were 17 missing categories of documents. On October 13, 1997, MDH produced a fifth set of documents with a representation that no more responsive documents existed. Lang then advised MDH that it had still not produced at least 11 categories of records expressly called for by the demand and the court's order. The MDH bookkeeper admitted at her deposition that key financial records existed in her computer and she was not asked to produce them. The bookkeeper had records for three bank accounts showing cash flow into and out of the business.

### 6. *Second Report of Referee*

On October 20, 1997, the trial court referred Lang's sanctions motion to Judge Dell. On November 1, 1997, Judge Dell prepared a second report and proposed order. As a preliminary comment Judge Dell stated: "[MDH has] represented on several occasions that full production of the materials demanded by [Lang] has been made. Such representations, however, have been disingenuous at best." Judge Dell then made the following proposed findings, in relevant part:

"[B] 1. Evidence of loan in excess of $200,000 by Allan Hochman to MDH. *Comment: Mr. Hochman's declaration states that 'general ledger #2125 reflecting all loans has been provided.' Mr. Hochman does not allege that there are no other documents supporting the loan. It appears unlikely if not inherently incredible that there would be nothing in a corporation's or an individual's files such as a canceled check, a receipt or some type of agreement, other than a general ledger entry, . . .*

"2. Evidence of loan of $5,300 by Ed Moiselle to MDH. *Comment: Mr. Hochman's declaration states that 'general ledger #2125 reflecting all loans has been provided.' Mr. Hochman does not allege that there are no other documents supporting the loan. It appears unlikely if not inherently incredible that there would be nothing in a corporation's or an individual's files such as a canceled check, a receipt or some type of agreement, other than a general ledger entry, . . .*

"3. The absence of data stored on electronic accounting files. *Comment: Mr. Hochman's general declaration is not persuasive in the face of the specific facts testified to by* [the bookkeeper] *at her deposition. . . .*

"4. MDH's Articles of Incorporation. *Comment: Here there is a conflict; it is quite plausible that Mr. Hochman had reference to The Secret, Inc.'s Articles of Incorporation rather than those of MDH. There is no reason for plaintiffs to deny receipt of the MDH Articles if in fact they were received.*

"5. Building leases. *Comment: Here again there is a conflict. There is no reason for plaintiffs to deny receipt of the building leases if in fact they were received.*

"6. Agency contracts. *Comment: Here again there is a conflict. It may be that defendants felt they had discharged their obligation by supplying the MDH-The Secret, Inc. contract; however, defendants are required to produce all of MDH's agency contracts.*

"7. Time accounting documents, including job books and backup envelopes. *Comment: Mr. Hochman's initial denial of the existence of such documents is substantially impeached by his deposition testimony of October 15, 1997. Defendants have an obligation to search for such documents, including by job number. . . .*

"8. Checks deposited into MDH accounts. *Comment: Again, a conflict. Possibly the request was misunderstood. It would be anticipated that in the ordinary course of business MDH would keep copies of checks received and deposited.*

"9. Documents subsequent to March, 1997. *Comment: Here there is no conflict other than as to the content of the Court's order, as to which defendants are mistaken. They agree that production of these documents has not been made, . . .*" (Italics in original.)

Judge Dell further found that "[t]o the extent that defendants' counsel represented on more than one occasion that full production had been made of those matters included within the referee's recommendations of September 11, 1997, and the Court's Order of September 23, 1997, those representations were incorrect, and remain incorrect, at least as to those items described in Findings B.1. through B.9. . . ." Judge Dell also found that "[d]efendants' delay in producing documents has not been shown to be excusable, and has caused (a) a delay in plaintiffs' completion of their discovery and preparation for trial, and (b) unnecessary expense to plaintiffs in pursuing their discovery."

Judge Dell then recommended denial of Lang's motion for terminating sanctions, without prejudice. Judge Dell stated: "Although the conduct of defendants had been, in the view of the undersigned, egregious and inexcusable, it still does not approach the degree which the undersigned believes necessary to invoke the ultimate sanction of termination." Judge Dell also recommended "[t]hat defendants be precluded from introducing into evidence any documents, or any secondary evidence thereof, which were included in the Court's order for production and have not been produced to plaintiffs heretofore or within 10 days of this report"; that defendants pay plaintiffs' counsel $7,500 in attorney fees; and, that defendants pay the referee $4,000.

MDH objected to Judge Dell's proposed order and recommendations, and offered to produce additional documents in their possession, custody or control "which have not been produced to date."

### 7. *Trial Court's Ruling*

On November 3, 1997, the trial court adopted Judge Dell's recommendations, with some modifications. The trial court denied Lang's motion for terminating sanctions, without prejudice, but kept the sanctions motion under submission. The trial court required MDH to pay Lang's counsel $10,000.

### 8. *Ex Parte Application*

On November 5 and 6, 1997, MDH filed motions to compel discovery, and on November 17, 1997, sought ex parte relief to calendar the motions.

Lang opposed the request for ex parte relief on grounds that the discovery cutoff date had passed (Nov. 14, 1997) and that MDH had still not complied with the discovery order or the order for payment of attorney fees. Amnon Mizrahi (Mizrahi), the former accountant for MDH and The Secret, Inc., filed a declaration stating that he examined all records produced by MDH and that MDH had still not produced various categories of documents. He stated, in part:

"3. Based upon my memory of their electronic files and their books and records, it is apparent to me from the documents that I examined that the following list of eighteen documents and categories of documents maintained by MOISELLE/DORSEY/ HOCHMAN have never been produced:

"(a) The Articles of Incorporation of Moiselle/Dorsey/Hochman, Inc. have not been produced;

"(b) Most of the invoices from vendors to MDH have not been produced. I am personally aware of at least four full file drawers of such accounts payable documents;

"(c) The Peachtree electronic accounting system was never produced. The documents received in printed form represent only a small portion of the files and materials maintained on computer discs;

"(d) None of the electronic accounting file information pertaining to The Secret, Inc. and The Secret, L.P. have been produced;

"(e) None of the electronic files that are resident on the file server in the MDH offices which contain the media results for The Secret, Inc. as well as other related files have been produced;

"(f) No MDH employee files have been produced;

"(g) No printouts or files of the general journal, sales journal, purchase journal or adjusting entry journal have been produced;

"(h) No bank reconciliations have been produced;

"(i) No accounts payable monthly aging reports or accounts receivable monthly aging reports other than the one month of March, 1997 have been produced;

"(j) No vendor listing from their computer system has been produced;

"(k) The customer master file from the accounting system has not been produced;

"(l) No lease agreement has been produced for the MDH office which was located at 1888 Century Park East;

"(m) No equipment leases have been produced such as the leases with Enterprise Financial, Pitney-Bowes, Copelco Capital and Xerox;

"(n) No insurance policies (life, health, auto, etc.) have been produced;

"(o) No vendor contracts have been produced;

"(p) No unemployment claims or files have been produced;

"(q) No checks deposited into the MDH accounts have been produced; and

"(r) No documents have been produced after March, 1997."

### 9. *Motion for Terminating Sanctions*

On November 17, 1997, Lang also filed an ex parte application for terminating sanctions. Lang alleged that MDH had failed to produce documents and comply with the court's first or second orders. He also noted that accountant Mizrahi, who formerly worked for MDH, had filed a declaration listing various categories of documents he knew existed but which MDH had not produced.

On November 17, 1997, the trial court heard the ex parte applications. The court first observed: "For any reviewing court, I have balanced all of the competing factors, and this is one of the most egregious discovery cases that this bench officer has had an occasion to see where there is a tactical and what this Court believes to be a willful refusal to comply with discovery, precluding the plaintiffs their right to prepare for trial and to process their case before this court. And so I want any reviewing court to be aware that this Court has balanced all of the competing interests. The Court has tried to come in and to evaluate for less onerous potential sanctions, but the Court has heretofore been unsuccessful and it's my belief that even as of this very moment . . . [t]he defendants have not complied with prior court orders, recommendations by the discovery referee, Judge Dell, and orders of this Court."

In response, MDH's counsel stated, in relevant part: "And I hope Your Honor realizes that I don't want to violate attorney-client privilege, but just let me say we have never encouraged [defendants] not to produce documents[,] but to the contrary. And they come in and they say, 'Oh, we just

found this, [counsel], and I say, 'For God's sake, we're getting a black eye before the Court. I'm begging you guys, just give these documents up,' and there's no reason that they wouldn't. I swear to you. It can't possibly help them. In fact, it's killing them right now."

### 10. *Trial Court Ruling*

The trial court then ruled: "The Court order applies to all evidence. The defendants are precluded from any discovery of plaintiffs, that's expert and nonexpert, until this Court receives satisfactory evidence that its prior discovery orders have, in fact, been complied with. .[¶] The Court is going to order that the two prior discovery orders and findings by Judge Dell adopted by this Court are [to be] complied with. The Court is going to give defendants until Wednesday[, November 19, 1997,] at 4:00 p.m. to have paid the $10,000 sum to plaintiffs as ordered, to comply with all prior discovery orders, and that Judge Dell is requested by this Court . . . to conduct discovery hearing again, and I'm doing this because I'm putting you on notice that I've taken under submission terminating sanctions. If I find that any of the $10,000 sanctions and/or any of the discovery matters as previously ordered and articulated in Judge Dell's discovery order is not complied with, this Court will make terminating sanctions to the extent of striking the defendants' Answer."

At the conclusion of the hearing the trial court noted: "These are the most onerous discovery sanctions this Court has either imposed or is considering imposing and I find that—I want the record to very clearly reflect that [defense counsel] has, in his statements, made reference to conduct by his clients, and I think it's important that this Court gets very concerned about conduct by counsel that leads to sanctions for client, and I think that based upon what I know of this case and statements by [defense counsel], that the refusal or problems with discovery in this case are not merely attributable to counsel but are also directly attributable to conduct of clients, the defendants in this case, which the Court will note because the Court is considering terminating sanctions in this case."

On November 20, 1997, MDH filed a statement of compliance with the discovery order. MDH declared that it had "produced all of its financial and accounting records and [paid] the $10,000 sanction as ordered by the Court." MDH explained that it never intended to intentionally withhold documents from Lang, but merely misunderstood the court order.

### 11. *Third Report of Referee*

On December 1, 1997, Judge Dell submitted a tentative report. As of the date of that report, MDH had paid the $10,000 fee to Lang.

Judge Dell held a discovery hearing on December 8, 1997 to determine the extent of MDH's compliance with the discovery orders. Ten witnesses testified at the hearing, which generated 343 pages of transcript and lasted over seven hours.

On December 12, 1997, Lang served on MDH a statement of damages pursuant to section 425.11.

12. *Fourth Report of Referee*

On December 15, 1997, Judge Dell submitted to the trial court a final report after the hearing. He outlined the categories of documents listed by the former MDH accountant and reached the following conclusions:

"(a) Articles of Incorporation of MDH, Inc. . . . NEW FINDING: Defendants were technically in compliance as to this item, although belatedly, but were not in compliance with the intent of the discovery order when they produced only the articles of incorporation of a shell corporation which did no actual business and not the articles of incorporation of the corporation which was actually doing business—and which had been using the same name as the shell corporation . . . .

"(b) Invoices of vendors to MDH. . . . NEW FINDING: Prior to the date of the hearing, defendants had not made a full production of the invoices and were not in compliance. The two 'white boxes' produced by [defendants] at the hearing contained additional materials not previously produced. It is unknown if there are still additional unproduced items in the possession of defendants. Even if all the designated items were previously produced or were within the two white boxes, defendants are nevertheless not in compliance, because they did not produce the white box materials to plaintiffs.

"(c) Documents re Peachtree Electronic Accounting System; (d) electronic accounting file information re The Secret; (g) printouts or files of general journal, sales journal, purchase journal or adjusting entry journal. . . . [¶] . . . It appears that although substantial information has now been provided to plaintiffs, there are omissions of certain classifications and gaps within those classifications covered. . . . NEW FINDING: There is considerable confusion as to completeness of production, enough so that I . . . cannot find that defendants to be in default as to production of these items. [¶] . . . [¶]

"(e) Electronic files on file server containing media results for The Secret, Inc. and related files. . . . NEW FINDING: I do not find that defendants are in default as to production of these items.

"(f) MDH employee files. . . . NEW FINDING: Defendants are not in compliance. [¶] . . . [¶]

"(h) Bank reconciliations. . . . NEW FINDING: Defendants are in compliance.

"(i) Accounts payable and receivable monthly aging reports other than March 1997. . . . FINDING: Defendants are not in compliance.

"(j) Vendor master file. . . . NEW FINDING: Defendants are in compliance.

"(k) Customer master file. . . . NEW FINDING: Defendants are in compliance.

"(m) Equipment leases. . . . NEW FINDING: Defendants are not in compliance.

"Items (n) through (q) were not again commented upon by plaintiffs; hence there is no necessity for a finding as to compliance or noncompliance. Nor is there any necessity for any further comment as to Item (r), except as to the so-called Dorsey and Dorsey-Albertsson-Basile items. . . .

"1. Dorsey items:

"(a) General ledger for September 1 - December 31, 1995.

"(b) Invoice log book for media and production invoice amounts.

"(c) Documents re Moiselle-AFTRA-Talent Partners transactions.

"(d) Documentation re lawsuits including The Secret and other parties.

"2. Dorsey-Albertsson-Basile items:

"(a) Looseleaf book of 125 to 150 3.5 inch floppy disks, which included financial information.

"(b) Backup index book for those floppy disks.

". . . NEW FINDING: Although the evidence as to other items may be equivocal, defendants are not in compliance as to item 1(d), at the very least.

FURTHER COMMENT: With respect to a claim of over half a million dollars, which would have a substantial financial impact, defendants were required to provide plaintiffs the underlying relevant documents."

In conclusion, Judge Dell recommended "that if the Court does not impose a terminating sanction, defendants be precluded from offering into evidence or referring to any documents in their possession which were within the scope of discovery and not provided to plaintiffs." Judge Dell also requested that $8,200 be paid to him by MDH.

13. *Renewed Application for Tterminating Sanctions*

On December 16, 1997, Lang renewed his ex parte application for entry of terminating sanctions. He argued that MDH had failed to comply with three pending court orders. He contended that MDH had withheld two boxes of documents and had failed to produce seven categories of documents. MDH opposed the application.

On December 16, 1997, the trial court vacated the trial date and ordered the parties to appear on February 13, 1998, for a hearing regarding imposition of sanctions.

On January 12, 1998, the trial court ordered MDH to pay to Judge Dell $8,200.

On February 18, 1998, the trial court conducted a hearing on the issue of terminating sanctions. After the parties reviewed the history of the discovery dispute, the trial court made the following ruling: "Tentatively, I am granting the motion for terminating sanctions subject to . . . and this is a very important caveat—Judge Dell's recommendation on terminating sanctions, and this matter has been in front of him. . . . I'm ordering this matter be referred to Judge Dell, not for hearing but for motions, and you will be allowed to file with Judge Dell, each side, a motion . . . and an opposition by defendants consistent with the Superior Court rules, and Judge Dell will rule from the motions filed and all of his prior hearings and make a recommendation."

On February 20, 1998, Lang filed before Judge Dell a statement in support of terminating sanctions. Lang requested that the trial court strike the answer, enter MDH's default, award Lang costs and attorney fees, and set the matter for a default judgment prove-up hearing. Lang further requested that the trial court strike MDH's cross-complaint, and the complaint in a related matter. On February 26, 1998, MDH filed its opposition to Lang's statement.

### 14. *Final Report of Referee*

On March 20, 1998, Judge Dell filed his report and recommended imposing terminating sanctions on MDH. He stated, in relevant part: "I believe the conduct of the defendants to be egregious. I am disturbed particularly by defendants' production of meaningless Articles of Incorporation of a shell corporation while no production was made of the Articles of Incorporation of an identically named active corporation . . . ; their attempted shifting of responsibility from themselves to plaintiffs with respect to items #2 [Invoices of vendors to MDH], #4 [Accounts receivable and monthly aging reports . . .] and #5 [Equipment leases]; their continued inaccurate representations that full production has been made. [¶] I am aware that appellate courts are reluctant to approve terminating sanctions, even in serious cases. If defendants had taken more seriously the findings made after the hearing of December 8, 1997, and produced immediately the contents of the two white boxes and the other items specified in the report of December 15, 1997, I would have felt terminating sanctions to be excessive and limited my recommendation to monetary, evidentiary and discovery sanctions. However, defendants are still asserting 'If you want th[e]se materials, it's your responsibility to ask (*again!*) for them.' [¶] My principal recommendation is for the issuance of terminating sanctions as requested by plaintiff." (Italics in original.)

MDH objected to Judge Dell's recommendations and requested a hearing before the trial court.

On March 20, 1998, the trial court adopted Judge Dell's recommendation and signed an order imposing terminating sanctions. The court struck MDH's answer, entered its default, and also dismissed MDH's cross-complaint and its complaint in a related case. The court ordered MDH to pay Judge Dell fees in the amount of $1,900. The court set March 25, 1998, for a default prove-up hearing.

### 15. *Court Orders Terminating Sanctions*

On March 25, 1998, the trial court vacated its earlier order imposing terminating sanctions and conducted a continuation of the sanctions hearing. After argument of counsel, MDH's counsel stated he brought to the hearing the documents which were, according to Judge Dell, not produced to Lang. The trial court re-executed its order imposing terminating sanctions. The trial court noted, in relevant part: "This Court has attempted monetary sanctions, has very seriously issued and balanced, as has the Honorable Judge George Dell. We've looked at issue sanctions. In looking at the

totality of the circumstances, we could not find that issue sanctions would be an appropriate sanction in this particular case. [¶] . . . [T]he Court is reluctant to punish clients for any wrongdoing by counsel. But in a prior hearing, [defense counsel], on the record, indicated that the problem with complying with discovery was based upon acts or beliefs that—of his clients, that the clients—*so the Court has made a specific finding that the violations of the discovery orders and rules flow directly to the clients themselves and not necessarily attributable to counsel. [¶] So the Court in a prior hearing, based upon representations by [defense counsel], has made that finding; so the Court feels that it is appropriate with that finding to sanction the clients, and that's what a terminating or issue sanction does.* That has already been determined. That is already in the record. [¶] The Court cannot find any other viable manner to protect the interests—it's not just the defendants' rights in this case. The plaintiffs have rights. They have been denied their right to a fair trial, *and the Court is finding that counsel and the clients of the defendants in this case have willfully, intentionally, violated the discovery laws, the orders of this Court, the recommendations of Judge Dell.* And the Court, in balance, finds no other sanction appropriate with the exception of the terminating sanctions." (Italics added.)

### 16. *Motion for Reconsideration*

On April 9, 1998, MDH filed an application for substitution of attorney, and also filed a motion for reconsideration. MDH argued that its former counsel abdicated responsibility of document production to MDH. MDH alleged former counsel did not advise it to number the documents, keep a set of numbered documents to prove what documents had been produced, or obtain receipts or proofs of delivery. Later, when these management failures caused disputes over what had been produced, MDH handed the records to former counsel who delivered them without Bates stamp numbers, without a control set of documents, or without receipts. MDH alleged former counsel lost all credibility with Judge Dell and the court. MDH argued that former counsel made sworn declarations that the documents had been produced, even though counsel had performed no due diligence with respect to the production. This, according to MDH, led to the court's terminating sanction order. MDH also contended that retention of successor counsel was a "different circumstance" justifying reconsideration. Lang opposed the motion.

### 17. *Section 473 Motion*

On April 15, 1998, MDH filed a section 473 motion for relief. MDH again argued that former counsel failed to properly manage the document production. On April 24, 1998, MDH belatedly filed an affidavit prepared by prior defense counsel. In the affidavit, prior counsel declared, in relevant part:

"3. A. As attorney of record for my clients, I was responsible for producing all documents that were responsive to the inspection demand. I should have reviewed the categories of documents to be produced pursuant to the document demand, reviewed the documents to ensure that all responsive documents were produced, and then produced the documents. I failed to take these steps.

"B. For example, I did not review the documents prior to production. . . .

"C. In addition, I did not have the documents bates stamped or cataloged prior to their production. . . .

"4. In order to expedite Defendants' production of documents . . . and to contain the costs . . . , I initially directed Defendants to deliver documents responsive to the inspection demand directly to [plaintiffs' counsel]. Consequently, no representative of my office was present during the preparation of the responsive documents, or their delivery . . . . [¶] . . . [¶]

"9. I have no reason to believe that either of my former clients, Moiselle, or Hochman intended to obstruct the document production process. While our office may have been negligent in supervising the delivery of documents, it is my belief that my clients['] failure to properly produce the same was not intentional, not meant to obstruct justice or conceal evidence. . . .

"10. With hindsight, our office should have asserted greater control over the document production. That negligence has resulted in denying our former clients their 'day in court.' . . .

"11. I believe the entry of the default should be set aside on the basis of my firm's mistake, inadvertence and excusable neglect in having failed to properly supervise the production of documents."

18. *Denial of Section 473 Motion*

Prior to the hearing on the motions, MDH served on Lang a notice of designation and production of documents in response to Lang's request for production. On May 6, 1998, the trial court heard arguments on the motions for reconsideration and section 473 relief, and denied both motions. In a signed order, the trial court stated, in relevant part: "The motion for reconsideration is denied. The motion is untimely . . . . Further, even if the

motion had been timely filed, it fails to set forth new or different facts, circumstances or law that would compel the Court to set aside the prior ruling. [Citation.] [¶] The companion motion to set aside filed under Code of Civil Procedure Section 473 is also denied. An attorney's affidavit of fault mandates relief unless the Court finds that the default was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. In the present case, the default (terminating sanction) was not in fact caused by [prior defense counsel's] mistake, inadvertence, surprise or neglect. *The default was caused by the discovery misconduct of defendants as well as [prior defense counsel]. This type of shared misconduct does not mandate relief under Code of Civil Procedure Section 473.* (See *Johnson* v. *Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-[6]23 [34 Cal.Rptr.2d 26]." (Italics added.)

### 19. *Judgment*

On or about May 7, 1998, Lang filed a statement in support of damage prove-up and a memorandum of costs. The trial court scheduled a prove-up hearing for May 9, 1998. On May 27, 1998, MDH filed a motion to tax costs. On June 3, 1998, the court struck the motion.

On June 24, 1998, the trial court filed a judgment after default. A modified judgment was filed on August 4, 1998 (and deemed to be entered on June 24, 1998).

On September 4, 1998, MDH filed a notice of appeal.

## III

### CONTENTIONS

MDH contends that the trial court:

1. Abused its discretion in granting terminating sanctions;

2. Erred by imputing fault to defendants to avoid the mandatory relief provision of section 473;

3. Erred in denying relief under the discretionary provisions of section 473;

4. Denied defendants' due process rights in making its award of damages; and

5. Erred in allowing the judgment to contain items of damage unrecoverable as a matter of law.

## IV

## DISCUSSION

**A.** *The Trial Court Did Not Abuse Its Discretion in Ordering Terminating Sanctions.*

 MDH first contends that the trial court abused its discretion by granting terminating sanctions. We disagree.

MDH's failure to comply with *three* discovery orders "was an abuse of discovery . . . for which the court was authorized to impose sanctions delineated in [Code of Civil Procedure] section 2023, subdivision (b). Section 2023, subdivision (b) permits (1) a monetary sanction, (2) an issue sanction, (3) an evidence sanction, (4) a terminating sanction or (5) a contempt sanction. . . . [¶] . . . [¶] In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason. [Citation.]" (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773], fn. omitted.)

In *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481 [282 Cal.Rptr. 530] (disapproved on other grounds in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4 [66 Cal.Rptr.2d 319, 940 P.2d 906]), the trial court dismissed plaintiffs' action as a sanction for failing to comply with a discovery order and for violating various discovery statutes. The trial court ordered plaintiffs to answer interrogatories and provide requested documents, which they failed to do. (*Laguna, supra,* 231 Cal.App.3d at pp. 484-485, 488.) Defendants extended the deadline for the responses and the production, but plaintiffs failed to comply. Defendants filed, inter alia, a motion to dismiss, which the trial court granted. (*Id.* at pp. 484-486.) The court observed: "[I]n this case it was continued wilful violations of the discovery statutes embodied in the Code of Civil Procedure which prompted the court's order dismissing the action." (*Id.* at p. 490.) Furthermore, the court stated, "[t]he issue in this case is whether the trial court abused its discretion in dismissing the action . . . . Substantial evidence supports the trial court's conclusion that appellants wilfully obstructed discovery, failed to honor their stipulation with counsel that they would comply with discovery, and defied the court's order to answer all interrogatories and produce all documents by September 29. There was no abuse of discretion in dismissing the action." (*Id.* at p. 491.)

In *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611 [26 Cal.Rptr.2d 786], the trial court imposed terminating sanctions after defendants failed to comply with one court order to produce discovery. The

plaintiff served the defendants with form and special interrogatories, a demand for the production of documents, and requests for admissions. After failing to receive appropriate responses, or timely responses, the plaintiff sent the defendants numerous letters requesting compliance with the discovery. The defendants failed to respond. The plaintiff filed separate motions to compel, which the trial court granted. The court ordered the defendants to produce the requested documents and further respond to interrogatories and requests for admissions by a set date. The defendants failed to comply with the trial court's orders. (*Id.* at pp. 1613-1615.) The plaintiff then filed a motion to strike the defendants' answer, which the trial court granted. (*Id.* at p. 1615.) The defendants filed a motion for reconsideration and subsequently served further answers to discovery that had been propounded on them eight months earlier. The trial court granted the motion for reconsideration and " 'concluded that its order . . . striking defendant[s'] answer and entering defendant[s'] default is supported by the record, was correct, and should not be vacated or modified.' " (*Id.* at p. 1616.) The court noted that " '[o]btaining discovery from defendant[s] in this case has been like pulling teeth. The discovery history speaks for itself." (*Ibid.,* fn. omitted.)

The defendants argued "that since this was their 'first effort' at drafting responses, the trial court should not have resorted to the drastic sanction of striking their answer." (*Collisson & Kaplan v. Hartunian, supra,* 21 Cal.App.4th at p. 1618.) The Court of Appeal rejected that argument and stated: "Defendants' characterization of their further responses as being their 'first effort' to respond, while literally correct, is nonetheless misleading. The point that defendants fail to acknowledge is that, while this may have been their first attempt to respond, it was not plaintiff's first [attempt] at receiving straightforward responses. Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them. Accordingly, we find no abuse of discretion by the trial court." (*Id.* at p. 1618.)

The defendants also argued that the trial court should have imposed less drastic sanctions. (*Collisson & Kaplan v. Hartunian, supra,* 21 Cal.App.4th at pp. 1619-1620.) The court disagreed and stated: "An identical argument was rejected by this court in *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27 [9 Cal.Rptr.2d 396]. Our comments in that case apply with equal force to the case at bench: '[T]he question before this court is not whether the trial court should have imposed a lesser sanction; rather the question is whether the trial court abused its discretion by imposing the sanction it chose. [Citation.] Moreover, imposition of a lesser sanction would have permitted [defendants] to benefit from their stalling tactics. [Citation.] The trial court did not abuse its discretion by

*tailoring the sanction to the particular abuse.* [Citation.]' [Citation.]" (21 Cal.App.4th at p. 1620.)

 In each of these cases, the trial court imposed a terminating sanction after considering the totality of the circumstances: conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery. In each case, the offending party spent months avoiding or evading discovery. The courts considered whether the court had abused its discretion in ordering a terminating sanction.

In this appeal, we find no abuse of discretion. MDH failed to timely respond to the May 23, 1997, second request for production of documents and Lang granted an extension. When MDH finally provided Lang several documents, MDH announced that it had fully complied with the request for production. Lang discovered MDH had not produced all requested documents and filed a motion to compel, but MDH still did not produce the documents. On August 13, 1997, the court referred the discovery dispute to a discovery referee. Judge Dell recommended that the motion to compel be granted, and on September 23, 1997, the trial court signed the order (First Order). MDH still did not produce the documents.

MDH provided additional documents on September 26, 1997, October 7, 8, and 10, 1997. MDH contended again that it complied with the trial court's order. On October 9, 1997, Lang wrote MDH that there were still 17 missing categories of documents. MDH produced a fifth set of documents with another representation that no more responsive documents existed. Lang again wrote MDH that MDH had still not produced at least 11 specific categories of records, including computer records, expressly called for by the demand and the court's order. The trial court repeatedly defined the scope of production throughout this proceeding. MDH never argued to the discovery referee or the trial court that these categories of documents were beyond the scope of discovery.

The court referred Lang's motion for terminating sanctions to Judge Dell who determined that MDH's representations that full production had been made were "disingenuous at best." Judge Dell determined there was still discovery outstanding, and that MDH had not fully complied with the trial court's First Order. Judge Dell denied Lang's motion for terminating sanctions, without prejudice.

On November 3, 1997 (Second Order), the trial court adopted Judge Dell's recommendations, with some modifications. The trial court took the

terminating sanctions motion under submission, and required MDH to pay Lang's counsel $10,000.

On November 14, 1997, Lang filed another application for terminating sanctions. The trial court heard the matter and again ordered the defendant to comply with the Second Order and to pay the $10,000 by a set date (Third Order).

On November 20, 1997, MDH filed a statement that it had complied with the discovery order. Judge Dell held a hearing on December 8, 1997, to determine the extent of MDH's compliance. MDH brought boxes of documents to the hearing. Judge Dell submitted a report to the trial court that MDH had still not produced all categories of requested documents. The trial court ordered MDH to pay Judge Dell $8,200.

On February 18, 1998, the trial court conducted another hearing on terminating sanctions. It tentatively granted Lang's motion, but requested that Judge Dell file his recommendations. On March 20, 1998, Judge Dell recommended terminating sanctions and stated that the conduct of MDH was "egregious." On March 25, 1998, the trial court imposed terminating sanctions on MDH. MDH subsequently filed motions for reconsideration and section 473 relief.

The history of this case shows that MDH did not comply with the court's orders. The referee viewed MDH's constant declarations that it fully complied with the discovery request as "disingenuous at best." The referee and the court found MDH's lack of diligence to be willful, tactical, egregious and inexcusable. MDH's conduct prevented Lang from preparing for trial since the documents were necessary to Lang's objective of showing misappropriation and commingling of funds. The court, over the course of the year, progressively sanctioned MDH. Still, MDH did not produce the requested documents.

The trial court and the referee conducted many hearings and afforded MDH numerous opportunities to comply with their orders. On this record, the trial court did not abuse its discretion.

B. *The Trial Court Properly Denied MDH's Request for Section 473, Subdivision (b), Mandatory Relief.* [2]

 MDH contends it was entitled to section 473, subdivision (b) mandatory relief because prior defense counsel filed an affidavit of fault. We

---

[2]MDH also contended that the trial court erred in denying relief under the discretionary provisions of section 473. The record reflects that the trial court did not believe MDH's excuses for failing to respond to discovery requests or court orders. It found MDH's conduct

disagree. In this case, the trial court found that both the parties and their attorney contributed to the discovery abuses which caused the default. We determine that where the parties to a lawsuit have contributed to a default or dismissal, they are not entitled to relief pursuant to subdivision (b) of section 473. Unless the acts or omissions of MDH's attorney were the *sole* cause of the default judgment, MDH is not entitled to relief.

 "Section 473 permits a party or the party's legal representative to be relieved from the consequences of mistake, inadvertence, surprise, or neglect." (*Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 989 [47 Cal.Rptr.2d 362].) The statute includes an attorney affidavit provision in subdivision (b). "Under this provision, a party is relieved from the consequences of his or her *attorney's* mistake, inadvertence, surprise, or *neglect*. Relief is available regardless of whether the attorney's neglect is excusable. [Citations.] Moreover, if the requirements of this provision are met, then relief is *mandatory*. [Citations.]" (*Id.* at p. 989, italics in original.)

The attorney affidavit provision in section 473, subdivision (b) provides, in relevant part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, *unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.*" (Italics added.)

The attorney affidavit provision was enacted in 1988. The purpose of the provision was " 'to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' [Citation.] In the words of the author[,] ' "Clients who have done nothing wrong are often denied the opportunity to defend themselves, simply because of the mistake or inadvertence of their attorneys in *meeting filing deadlines*." ' (Letter of Sept. 14, 1988, from Sen. Ed Davis to Governor George Deukmejian re: Sen. Bill No. 1975 . . . .)" (*Huens v. Tatum* (1997) 52 Cal.App.4th 259, 263 [60 Cal.Rptr.2d 438].)

 Thus, a party can rely on the mandatory provision of section 473 only if the party is totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal.

---

to be willful. Considering the trial court's position, MDH could not meet the requirements for discretionary relief.

The courts have granted mandatory section 473 relief when the facts show that the parties did not contribute to the conduct which caused the default or dismissal. For example, *Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861 [62 Cal.Rptr.2d 98], affirmed the grant of a motion to vacate a default and default judgment based upon attorney misconduct regarding discovery requests and motions to compel. *Milton* found there was substantial evidence that the parties "were not responsible in whole or in part" for the defaults and default judgments. (*Id.* at p. 868.) *Vaccaro v. Kaiman* (1998) 63 Cal.App.4th 761 [73 Cal.Rptr.2d 829], reversed the trial court and found that the "mandatory provision of section 473 required the court to set aside the order of dismissal when plaintiff's counsel admitted his neglect." (*Id.* at p. 763). In that case, the trial court struck the first amended complaint because counsel failed to sign it. (*Ibid.*) In the motion for relief from default, the attorney filed a declaration taking *sole* responsibility for failing to sign the pleading more promptly. The plaintiff also declared that " 'if there was any delay in the filing and serving of a signed version of the Amended Complaint, it was *solely* the result of the acts of my counsel.' " (*Id.* at p. 770, italics added). The Court of Appeal found that the "uncontradicted affidavits show[ed] that the pleading was not promptly signed solely because [the attorney] . . . delay[ed] signing, contrary to plaintiff's instructions. There [was] no evidence that plaintiff herself caused [the attorney] not to sign the pleading." (*Id.* at p. 771).

By contrast, *Todd v. Thrifty Corp.* (1995) 34 Cal.App.4th 986 [40 Cal.Rptr.2d 727], held that counsel covered up for his client's actions and thus the client was not entitled to the mandatory relief provision of section 473. (34 Cal.App.4th at p. 992.) In *Todd*, the plaintiff's lawsuit was dismissed for failure to comply with discovery. The plaintiff's attorney tried to set aside the dismissal under the discretionary section 473 relief. He filed a declaration explaining that the plaintiff failed to comply with the discovery orders because of ill health and other family and business emergencies. When the court denied that motion to set aside, the attorney filed a new motion under the mandatory section 473 relief. He then filed a subsequent declaration in which he blamed himself for the plaintiff's failure to comply with discovery requests and orders. The *Todd* court held that the attorney could not change his story; "[h]aving attributed the dismissal to plaintiff's personal problems at the first hearing, counsel could not thereafter attempt to change the facts and blame himself." (34 Cal.App.4th at p. 992.) Mandatory section 473 relief shall not be granted when the attorney is "simply covering up for the client." (*Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 821 [14 Cal.Rptr.2d 286].)

*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613 [34 Cal.Rptr.2d 26], is analogous to the matter before us. In *Johnson*, defendant

Pratt failed to respond to the plaintiffs' numerous document requests and failed to comply with various court orders. (*Id.* at pp. 617-620.) The plaintiffs moved for terminating sanctions, or in the alternative, issue and evidence preclusion sanctions. (*Id.* at p. 620.) At the hearing, the trial court asked Pratt's counsel to explain the apparent stonewalling. (*Ibid.*) The Court of Appeal stated: "Numerous instances of such conduct were noted by the [trial] court, one of which involved Pratt's counsel having told the court his client did not have documents which, it turned out, the client did have. Counsel responded that he had given the court the information provided to him by his client: 'If [the Pratt manager responsible for the documents] tells me we don't have them, I have to believe him.' Finding lack of credibility an 'ever continuing flavor' in the proceedings, [the trial court] granted plaintiffs' motion 'for the issue [] sanctions and evidentiary sanctions as requested.' Further, on its own motion, it struck Pratt's answer 'in light of all the concerted activities to deter discovery.' " (*Id.* at pp. 620-621, fns. omitted.)

As occurred in our case, Pratt then substituted in new counsel who filed motions for reconsideration and for section 473 relief. (*Johnson v. Pratt & Whitney Canada, Inc., supra,* 28 Cal.App.4th at p. 621.) Pratt "moved for relief under section 473, on the basis of the former attorney's affidavit swearing his client had at all times acted in good faith and had never instructed him to evade or disobey discovery obligations; he attested that sanctions imposed on Pratt were solely the result of his own mistakes, omissions and neglect. The court denied the motion[], . . ." (*Ibid.*)

The Court of Appeal determined there was substantial evidence that Pratt was implicated in the discovery abuse. (*Johnson v. Pratt & Whitney Canada, Inc., supra,* 28 Cal.App.4th at p. 623.) The *Johnson* court observed: "In particular, counsel stated at the sanctions hearing that his client had advised him documents did not exist, when, in fact, it appears they *did* exist. And in his deposition, counsel laid the blame for Pratt personnel's evasive and nonresponsive declarations squarely at the feet of his client. Additionally, the court reasonably could have found unsatisfactory the explanations offered by Pratt's general counsel, new counsel and others as to, for instance, why it was so difficult for them to know whether certain crucial documents were available or had been destroyed. Pratt and its counsel shared the credibility problems which the court found had added 'an ever continuing flavor' to the discovery proceedings. The court did not abuse its discretion in denying Pratt relief from sanctions under section 473." (*Ibid.,* italics in original.)

In our case, as in *Todd* and *Johnson,* MDH's prior defense counsel attempted to take the blame for discovery abuses in an effort to support his

former clients' motion for section 473 mandatory relief. MDH's prior counsel stated in his declaration, as follows:

"3. . . . I was responsible for producing all documents that were responsive to the inspection demand. I should have reviewed the categories of documents to be produced pursuant to the document demand, reviewed the documents to ensure that all responsive documents were produced, and then produced the documents. I failed to take these steps.

" . . . . . . . . . . . . . . . . . . . . .

"9. I have no reason to believe that either of my former clients, Moiselle, or Hochman intended to obstruct the document production proceeding. While our office may have been negligent in supervising the delivery of documents, it is my belief that my [former] clients['] failure to properly produce the same was not intentional, not meant to obstruct justice or conceal evidence. . . ."

This declaration, however, directly contradicted counsel's prior remarks to the trial court wherein he stated "we have never encouraged [defendants] not to produce documents[,] but to the contrary. And they come in and they say, 'Oh, we just found this, [counsel],' and I say, 'For God's sake, we're getting a black eye before the Court. I'm begging you guys, just give these documents up,' and there's no reason that they wouldn't. I swear to you. It can't possibly help them. In fact, it's killing them right now."

As in *Todd* and *Johnson*, the trial court denied the section 473 motion because it determined that MDH was implicated in the discovery misconduct. The trial court stated in its ruling: "[B]ased upon what I know of this case and statements by [defense counsel], that the refusal or problems with discovery in this case are not merely attributable to counsel but also are directly attributable to conduct of clients, the defendants in this case[.]" At the terminating sanctions hearing, the trial court further stated: "[T]he Court is reluctant to punish clients for any wrongdoing by counsel. But in a prior hearing, [defense counsel], on the record, indicated that the problem with complying with discovery was based upon acts or beliefs that—of his clients, that the clients—so the Court has made a specific finding that the violations of the discovery orders and rules flow directly to the clients themselves and not necessarily attributable to counsel."

 As we have stated, mandatory relief can be granted only where the facts show solely attorney error. That is because section 473, subdivision (b) protects only the innocent client. It provides no relief for the culpable client

who participates in conduct which led to the default or dismissal. When deciding whether to grant relief, the court must resolve the issue whether attorney actions, or the misconduct of the parties themselves, actually caused the default or dismissal. If attorney actions did not solely cause the terminating sanctions and the subsequent default judgment in this case, the parties cannot rely on the mandatory relief provision of section 473.

 In this appeal, the trial court determined that shared misconduct caused the default judgment and subsequent dismissal. Based on the remarks by MDH's prior counsel to the trial court, we find substantial evidence for the trial court's determination.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V

### DISPOSITION

The judgment is affirmed. MDH to pay Lang costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied March 1, 2000, and appellants' petition for review by the Supreme court was denied April 19, 2000.

---

*See footnote, *ante*, page 1225.