[No. B072128. Second Dist., Div. One. Jan. 24, 1994.]

COLLISSON & KAPLAN, Plaintiff and Respondent, v.
STEVEN HARTUNIAN et al., Defendants and Appellants.

## COUNSEL

Ginsburg, Stephan, Oringher & Richman, David S. Richman, Sklar, Levinson & Dornstein and Daniel M. Sklar for Defendants and Appellants.

Billet & Kaplan, Terry S. Kaplan, Phyllis G. Pollack and Jordan Trachtenberg for Plaintiff and Respondent.

## OPINION

**MASTERSON, J.**—Steven Hartunian and Sumitomo Tower, Ltd. (defendants), attempted to derail a fast track case through evasive answers to discovery. As a sanction for this conduct, the trial court ordered defendants' answer struck. Defendants appeal from the ensuing default judgment. We affirm the judgment and impose sanctions against defendants and their attorneys for having prosecuted a frivolous appeal.

### BACKGROUND

On October 18, 1991, Collisson & Kaplan (plaintiff) filed a complaint against defendants alleging various causes of action for nonpayment of legal fees. On November 18, 1991, defendants filed a general denial answer and raised 13 affirmative defenses.

On January 21, 1992, plaintiff served defendants with form and special interrogatories. On February 21, 1992, defendants filed verified responses to the form interrogatories. However, contrary to the requirements of Code of

Civil Procedure[1] section 2030, subdivision (g), the responses to the special interrogatories were not verified. As to the interrogatories concerning the facts underlying defendants' general denial and affirmative defenses, each defendant repeatedly invoked the stock phrase: "Defendant is compiling the information requested by this interrogatory. Defendant has not finished this compilation. Defendant will provide this information to plaintiff as soon as defendant has finished this compilation."

By letter dated February 21, 1992, plaintiff objected both to the stock phrase quoted above and to the lack of verification of the responses to the special interrogatories. Plaintiff cautioned that if defendants failed to provide appropriate responses by February 26, 1992, it would "make the necessary motion." On February 26, 1992, defendants requested an additional day to respond to plaintiff's letter due to the illness of counsel. Plaintiff agreed, but defendants never responded.

On January 21, 1992, plaintiff served defendants with a demand for the production of documents. On February 13, 1992, not having received a timely response, plaintiff sent defendants a letter demanding the requested documents. Defendants never responded.

On January 22, 1992, plaintiff served defendants with 46 requests for admissions, many of which dealt with the subject of genuineness of various documents. On February 24, 1992, defendants served their verified responses to these requests. As to all but one of the forty-six requests, defendants objected on the ground that the requests were compound and therefore did not comply with section 2033, subdivision (c)(5). The response to the remaining request was left blank. On February 26, 1992, plaintiff sent defendants a letter pursuant to section 2033, subdivision (l), attempting to resolve the impasse. Defendants never responded.

On March 26, 1992, plaintiff filed separate motions to compel the production of documents and further responses to the interrogatories and requests for admissions. At the April 14, 1992, hearing thereon, plaintiff learned for the first time that defendants had filed a cross-complaint nearly five months earlier, which had not been served on plaintiff.[2] The trial court ordered defendants to produce the requested documents by April 30, to admit or deny the receipt of the documents identified in the first 22 requests for admissions by April 24, to meet and confer with regard to the objections to the other 24 requests for admissions, and to further respond to the interrogatories which

---

[1] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

[2] Rule 1306.1.2 of the Los Angeles Superior Court Rules requires that cross-complaints filed in fast track cases be served within 30 days of filing.

were the basis of the motion by April 30. Additionally, the trial court sanctioned defendants in the amount of $1,168.[3]

On April 17, 1992, plaintiff filed a motion to dismiss the cross-complaint due to defendants' failure to timely serve it. That motion was granted on May 6, 1992.

Despite the deadlines set by the trial court for defendants' further responses to discovery, defendants did not serve further responses to the requests for admissions and interrogatories until April 28, 1992, and May 8, 1992, respectively. More importantly, defendants continued with their gamesmanship. The bulk of their responses to interrogatories were given from the perspective of Empire Western Investment Corporation, a corporation for which Hartunian served as president and sole shareholder. Empire was not a party to the action.[4] Similarly, in their further responses to the requests for admissions, defendants would admit only that the various exhibits were "genuine cop[ies] of the referenced statement[s] received by Empire Western Investment Corporation."

Upon receiving these responses, plaintiff wrote another letter to defendants. Therein it pointed out that Empire was not a party to the action, and sought an explanation "why [Empire] is the one providing all of the answers in these discovery responses." Defendants' letter reply indicated, inter alia: "The further responses to all discovery were made by [defendants] and verified by Mr. Hartunian. The further responses were not made by Empire []. [¶] As you know, Mr. Hartunian contends that Empire [] (and not [defendants]) was the client with respect to the Sumitomo Tower building matter. Accordingly, Mr. Hartunian phrased the further responses with respect to this matter in terms of the relationship between Empire [] and your firm."

On July 16, 1992, plaintiff filed a motion requesting that defendants' answer be struck. The motion was made "on the grounds that Defendants have willfully failed to obey the previous order of this Court entered on or about April 14, 1992." Defendants opposed the motion by arguing that the responses had been made by them, and merely evidenced their legal defense that Empire (rather than defendants) had been plaintiff's client. Defendants also sought sanctions, arguing that plaintiff's motion was frivolous. Plaintiff's motion to strike the answer was granted on August 18, 1992, pursuant to sections 128.5 and 2023 and Los Angeles Superior Court Rules, rule 1310.

---

[3]These sanctions were paid on May 18, 1992, four days after the date ordered by the trial court.

[4]Most of defendants' responses began, "Empire [] is informed and believes . . . ."

On August 26, 1992, defendants filed a motion for reconsideration. Therein they made the following offer: "In order to eliminate any confusion caused by defendants' further responses, defendants are also willing to serve additional further responses within any time period ordered by this Court." Noticeably absent, however, were proposed further responses. Instead, defendants submitted "samples of additional further responses." The trial court then continued the hearing on the motion to September 29, 1992, so as to provide plaintiff with an opportunity to respond to a declaration belatedly filed by Hartunian.

It was not until September 21, 1992, eight days before the hearing on the motion for reconsideration, that defendants submitted what they claimed were complete answers to the discovery propounded on them almost eight months earlier. The minute order from the September 29, 1992, hearing states in part as follows:

"The motion to reconsider is granted. On reconsideration, after review of all declarations and pleadings submitted, the court has concluded that its order of August 18, 1992 striking defendant[s'] answer and entering defendant[s'] default is supported by the record, was correct, and should not be vacated or modified.

"Obtaining discovery from defendant[s] in this case has been like pulling teeth.[5] The discovery history speaks for itself. Defendant[s] did not even try to remedy the situation by submission of proposed supplemental responses until this court so ordered as part of reconsideration of its August 18, 1992 order.

". . . . . . . . . . . . . . . . . . . . . . . .

"This court is convinced that while Mr. Hartunian is bent on getting his bills adjusted, he has repeatedly deliberately failed to promptly and fully cooperate with legitimate discovery which ultimately resulted in the court having to vacate the October 5, 1992 trial date."

On October 15, 1992, following a default prove-up, the trial court entered a judgment in favor of plaintiff in the amount of $105,525.90.

## ISSUES

On appeal, defendants contend the trial court abused its discretion when it ordered their answer struck because (1) their responses to the requests for

---

[5]With all due respect to the able and experienced trial judge, we note that this has to be one of the great judicial understatements of all time.

admissions were appropriate, (2) this was their "first effort" at drafting responses to discovery, (3) the sole purpose of the sanction was punishment, (4) the sanction was not based on the ground stated in plaintiff's notice of the motion for sanctions, and (5) less severe sanctions were available.[6]

Plaintiff requests that we affirm the judgment and sanction defendants for failing to include in their appendix all documents necessary to determine this appeal.

## DISCUSSION

### 1. *Propriety of Defendants' Responses*

■ Focusing on plaintiff's allegedly compound "and/or" requests for admissions,[7] defendants argue that their responses, couched in terms of what billing statements Empire had received, were appropriate. They say that their responses were proper since one of the choices offered by the requests was whether an entity in which Hartunian held an interest (e.g., Empire) had received the billing statements.

We find it hard to believe that defendants make this argument with a straight face. The discovery called for responses by defendants. Empire was not a defendant. Nonetheless, the bulk of the responses began with the phrase "Empire [ ] is informed and believes . . . ." The code requirement is not only that the party (not a nonparty) respond, but also that the responses be ". . . complete and straightforward . . . ." (§ 2033, subd. (f)(1).) The responses made by defendants were the obverse of what the code required. They were evasive and quibbling. More bluntly stated, this was lawyer game playing at its worst.

Defendants' brief on appeal compounds their wrongdoing. For the most part, it engages in semantic exercises, discussing the claimed inherent

[6]In their reply brief, defendants for the first time argue that they were denied due process and that, under Business and Professions Code section 6148, subdivision (c), the oral agreement for legal services was voidable. Plaintiff has filed a motion to strike these improper portions of defendants' reply brief. We decline to consider defendants' arguments, and thus effectively grant plaintiff's motion. (*Midway Orchards* v. *County of Butte* (1990) 220 Cal.App.3d 765, 771, fn. 17 [269 Cal.Rptr. 796].)

[7]Defendants' objection to the requests for admissions was premised on the form of the requests which, when seeking to establish the genuineness of billing statements, as well as the receipt thereof, were phrased: "[The statement] is a true and correct copy of the statement for fees and costs dated [date of statement] received by Steven Hartunian and/or any entity in which he holds an interest, including but not limited to Sumitomo Tower, Ltd., Empire Investment Corporation and Empire Western Investment Corporation ('YOU') on or about the date it bears."

ambiguity of the phrase "and/or." At worst, the brief contains only verbal games of tic-tac-toe or Ping-Pong, designed to obscure a deliberate indifference to responsibility in discovery. At best (i.e., if defendants are really serious in what they say), it displays a propensity to engage in sophistry worthy of a theologian of the Middle Ages. Either way, we have no time for such antics. We reject totally defendants' contention that their responses were proper.

## 2. *"First Effort"*

Defendants next argue that since this was their "first effort" at drafting responses, the trial court should not have resorted to the drastic sanction of striking their answer.

Defendants' characterization of their further responses as being their "first effort" to respond, while literally correct, is nonetheless misleading. The point that defendants fail to acknowledge is that, while this may have been their first effort to respond, it was not plaintiff's first effort at receiving straightforward responses. Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them. Accordingly, we find no abuse of discretion by the trial court.

## 3. *Punitive Sanctions*

Defendants next assert that, since "no substantial discovery objective existed and the trial court found no prejudice to [plaintiff, t]he imposition of harsh sanctions was therefore entirely punitive and contrary to established law and the purpose and spirit of the Discovery Act."

We note first that the premise of defendants' assertion (i.e., no prejudice to plaintiff) is faulty. It is true that in determining whether to continue the hearing on defendants' motion for reconsideration, the court stated that plaintiff had not suffered prejudice, in the sense of being deprived of factual information about the case. Rather, due to the nature of defendants' responses, plaintiff did not "have a usable answer to discovery," i.e., a response that might be used as an admission of a party. The trial court then acknowledged that plaintiff had been prejudiced since the trial date had been vacated.

Defendants thus remove the trial court's comments from their proper context. The trial court's comments were directed toward whether it should

continue the hearing on reconsideration. It stated its desire to have as much information as possible before making a final determination regarding a sanction as serious as striking an answer. Contrary to defendants' ultimate assertion, the trial court did not treat this matter lightly. The record shows that the court went to great lengths to assure and, on reconsideration, to reassure that its decision was appropriate.

What we have here is defendants' persistent refusal to share with plaintiff the facts underlying their denial of liability and their purported affirmative defenses. We also have an approaching trial date scheduled for less than two months after the sanction hearing. On this, we conclude that, "[i]n choosing this sanction, the court was attempting to tailor the sanction to the harm caused by the withheld discovery. [Citation.]" (*Sauer* v. *Superior Court* (1987) 195 Cal.App.3d 213, 229 [240 Cal.Rptr. 489].)

### 4. *Improper Grounds*

Defendants next assert that the trial court relied on grounds which were different than those stated in plaintiff's moving papers. Specifically, defendants complain that the moving papers sought sanctions because defendants' further discovery responses were made from the perspective of Empire, whereas the court's ruling was based, in part, on plaintiff's complaint that the responses were made on information and belief.

Defendants' focus is far too narrow. Plaintiff's motion for sanctions was based on the overriding ground that defendants' further responses did not comply with the trial court's earlier order compelling discovery. One example of defendants' noncompliance was the fact the responses were made from Empire's perspective. Another example was that the responses were stated on information and belief. However, because both examples were a part of the general ground of defendants' noncompliance, defendants' assertion is totally without merit.[8]

### 5. *Less Drastic Alternatives*

Defendants next contend that the trial court abused its discretion by "knowingly disregarding the requirement that the court utilize the least

---

[8]Defendants' related assertion that the purported basis of the trial court's ruling denying reconsideration (i.e., that defendants' proposed supplemental responses were not specific enough) also was not mentioned in plaintiff's notice of motion for sanctions is equally without merit. Naturally, plaintiff did not challenge the propriety of defendants' proposed complete responses until the motion for reconsideration, since defendants chose to wait until that time to file such responses. Defendants have only themselves to blame for the timing of the situation.

severe sanction necessary to achieve the objectives of discovery." ■ An identical argument was rejected by this court in *Do It Urself Moving & Storage, Inc.* v. *Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27 [9 Cal.Rptr.2d 396]. Our comments in that case apply with equal force to the case at bench: "[T]he question before this court is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose. [Citation.] ■ Moreover, imposition of a lesser sanction would have permitted [defendants] to benefit from their stalling tactics. [Citation.] The trial court did not abuse its discretion by tailoring the sanction to the particular abuse. [Citation.]" *(Id.* at pp. 36-37.)

### 6. *Sanctions*

■ Plaintiff requests that we sanction defendants because they have failed to provide this court with an adequate appendix. Plaintiff complains that "[t]he indices are not in chronological and alphabetical order as required (California Rules of Court, Rules 5.1(c)(1) and 9(d)), are not consecutively paginated, and most importantly, many documents required for a fair determination of this matter [ ] are not included. (California Rules of Court, Rule 5.1(i))." (Italics omitted.) From this omission, plaintiff deduces that defendants were attempting to mislead this court.

Rule 5.1(i)(2) of the California Rules of Court authorizes the imposition of monetary sanctions if ". . . appellant's appendix is so inadequate that justice cannot be done without requiring inclusion of documents in the respondent's appendix which should have been in the appellant's appendix, or without the court's independent examination of portions of the original record which should have been in the appellant's appendix . . . ."

While we have rejected defendants' arguments on appeal, we would have reached the same conclusion even without the documents referenced by plaintiff. Accordingly, we deny plaintiff's request for sanctions on this basis. (See *Clean Air Transport Systems* v. *San Mateo County Transit Dist.* (1988) 198 Cal.App.3d 576, 580 [243 Cal.Rptr. 799].)

■ However, the matter does not end there. We have the interests of the public and the integrity of our system to protect. Accordingly, on November 18, 1993, we issued an order to show cause why sanctions for filing a frivolous appeal should not be imposed. As noted throughout this opinion, defendants' obstreperous conduct at the trial level has continued on this appeal. With sophistry and semantics, defendants have presented this court with convoluted briefs containing half-truths concerning the actions of the

parties and the trial court. Each of defendants' many arguments was without merit, yet each required a thorough examination of the record so as to resolve the issues presented.

Our Supreme Court has defined a frivolous appeal as one which "is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) By bringing this appeal, defendants have violated both of the alternative tests set forth by the Supreme Court.[9] As noted by the court in *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 136 [260 Cal.Rptr. 369], when a frivolous appeal is filed, "[o]thers with bona fide disputes, as well as the taxpayers, are prejudiced by the wasteful diversion of an appellate court's limited resources."

With regard to the appropriate amount of sanctions, one court has set forth a conservative estimate of $3,995 to process an average appeal. (212 Cal.App.3d at pp. 136-137, fn. 40.) However, this figure was calculated using statistics from 1987. Surely the cost to process an average appeal has risen since 1987. Moreover, in addition to reimbursing the taxpayers for the cost of processing a frivolous appeal, a proper goal of sanctions is to deter future frivolous litigation. (*City of Bell Gardens* v. *County of Los Angeles* (1991) 231 Cal.App.3d 1563, 1574 [283 Cal.Rptr. 91].) Accordingly, we impose sanctions in the amount of $10,000.

## DISPOSITION

The judgment is affirmed. Sanctions in the amount of $10,000 are imposed jointly and severally against appellants Steven Hartunian and Sumitomo Tower, Ltd., as well as their attorneys, David S. Richman, Ginsburg, Stephan, Oringher & Richman, Daniel M. Sklar, Sklar, Levinson & Dornstein. These sanctions shall be payable to the clerk of this court, who is directed to deposit that sum in the state's general fund. The clerk is further directed to send a certified copy of this opinion to the chief trial counsel of

---

[9]In their response to the order to show cause, defendants point to the appeal bond they have posted as proof that "this appeal has not been prosecuted to delay the effect of an adverse judgment." In the context of whether an appeal has been prosecuted for an improper motive, the posting of an appeal bond is an ambiguous act. All it indicates is that an appellant has the financial means to offer collateral against an increased amount should the judgment eventually be affirmed. However, the immediate effect upon the respondent in this situation is apparent: The appellant has succeeded in forcing the respondent to wait for payment of judgment. More bluntly stated, the respondent is stuck holding a check he cannot cash.

the Los Angeles office of the State Bar of California. (Bus. & Prof. Code, § 6086.7, subd. (c).)

Spencer, P. J., and Ortega, J., concurred.

A petition for a rehearing was denied February 23, 1994, and appellants' petition for review by the Supreme Court was denied April 20, 1993. Mosk, J., was of the opinion that the petition should be granted.