[No. A086713. First Dist., Div. Three. May 31, 2000.]

LOIS PIEROTTI, as Executor, etc., et al., Plaintiffs and Appellants, v. HANK TORIAN, Defendant and Appellant.

18

## Counsel

Niesar & Diamond, John J. Dacey and James M. Sitkin for Plaintiffs and Appellants.

David Jay Morgan, Inc., David Jay Morgan and Batya F. Smernoff for Defendant and Appellant.

---

**OPINION**

**PARRILLI, J.**—Hank Torian (Torian) has appealed from a portion of a superior court judgment confirming an arbitration award. In particular, he contends the arbitrator erred by finding that plaintiff Henry Pierotti (Pierotti)[1] was the prevailing party within the meaning of an attorney fees clause, and by awarding fees on the basis of that clause.

As we explain, this is precisely the type of issue our Supreme Court has said we cannot review in an appeal from an order confirming an arbitration award. We also conclude the appeal was frivolous and taken solely for the purpose of delay or harassment, and that Torian's attorneys grossly violated the California Rules of Court in preparing their briefs. We therefore impose sanctions in the amount of $32,000, to be paid one-half by Torian's attorneys and one-half by Torian personally. We also grant relief on Pierotti's cross-appeal by awarding postarbitration, prejudgment interest.

I

FACTS

Since Torian has not—and indeed cannot[2]—challenge the sufficiency of the evidence in this case, our statement of facts is based on the arbitrator's interim decision.

In the late 1980's, both Torian and Pierotti were car dealers in the City of Fremont. Torian, who owned the Honda and Toyota dealership in town, decided it would be advantageous to have all Fremont auto dealers share space in one large auto mall. Torian met with all the Fremont auto dealers and sold them on the idea of building an auto mall for all of them to share. Pierotti, who owned several dealerships (including Nissan), was part of that group.

---

[1]The plaintiffs are Henry Pierotti, Karl Haas, and Pierotti Motors, Inc. Haas and Pierotti are the sole shareholders of Pierotti Motors. Accordingly, references in this opinion to "Pierotti" are, depending upon the context, intended to collectively refer to all three plaintiffs. References to "plaintiffs" are to all three plaintiffs. Henry Pierotti died while this appeal was pending and his executor is now the respondent on Torian's appeal.

[2]In reviewing a contractual arbitration award we cannot review the sufficiency of the evidence supporting the award. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899]; *Caro v. Smith* (1997) 59 Cal.App.4th 725 [69 Cal.Rptr.2d 306].)

In 1987, Torian, acting on behalf of the incipient partnership, contacted two companies that owned large tracts of land in Fremont. Eventually, after a series of negotiating maneuvers, one of the companies (Catellus) offered to sell a large parcel of land to the dealers and also offered to pay Torian a 3 percent commission on the sale. Torian did not disclose to the other dealers that he was to receive a commission for the purchase of the Catellus land. Torian thereafter negotiated the purchase of approximately 75 acres from Catellus. The purchase terms were memorialized in an October 18, 1987 letter of understanding, which did not mention the 3 percent commission.

In May 1990 the dealers formed a formal partnership to develop the auto mall site. Section 14.6 of the 1990 partnership agreement provides in part that the "prevailing party [in arbitration] shall be entitled to reasonable attorneys' fees and costs . . . ."

Because of external economic pressures, Pierotti was the first dealer to construct his new dealership. He moved into his new Fremont Auto Mall site in November 1991. However, due to a slack economy and difficulty in obtaining financing, none of the other dealers followed on his heels. Pierotti's dealerships, as the lone outposts at the mall, lasted until June 1992, when he closed them. The auto mall did not become an "economic reality" until 1995.

Based on these facts, Pierotti brought two claims against Torian. First, he alleged Torian committed fraud and breach of contract by inducing Pierotti to move to the mall without himself having a present intention to move. Second, Pierotti alleged Torian breached his fiduciary duty to Pierotti by not disclosing that Catellus had offered him (Torian) a 3 percent commission to induce the dealers to purchase the Catellus property. Torian successfully moved to compel arbitration of *both* claims pursuant to an arbitration clause in the 1990 partnership agreement.

The arbitrator rejected the first claim. The arbitrator concluded Torian had no contractual obligation to move his dealerships to the mall in a timely fashion, and had not misrepresented his intent in this regard to Pierotti or the other partners.

However, the arbitrator found in favor of Pierotti on the second claim. In particular, the arbitrator found Torian had not informed the other dealers of the 3 percent commission until after the purchase was completed. The arbitrator found that "[a]lthough there was no formal partnership in existence at the time that Torian was negotiating on behalf of the dealers with Catellus, he was acting on their behalf and [they] are entitled to his secret profits."

The arbitrator concluded Torian received $850,000 from the Catellus transaction, and that Pierotti was entitled to his "proportionate share," or $345,726. The arbitrator also concluded punitive damages were appropriate, and awarded Pierotti a total of $700,000 to punish Torian for fraudulently breaching his fiduciary duties.

With respect to attorney fees, the arbitrator found that Pierotti and the other plaintiffs (see fn. 1, *ante*) were the prevailing parties within the meaning of section 14.6 of the partnership agreement between the parties. The attorney fees clause provides that "[t]he prevailing party shall be entitled to reasonable attorneys' fees and costs associated with the enforcement of their rights through arbitration . . . ." The arbitrator found that, "as prevailing parties, [plaintiffs] are entitled to recover the allowable costs incurred by them with respect to such claim, together with their attorney's fees . . . ." The arbitrator awarded the plaintiffs a total of $363,512.92 for attorney fees.

Pierotti petitioned the superior court to have the award confirmed and Torian filed a petition to correct the award on the ground the arbitrator "exceeded his jurisdiction" in awarding attorney fees. The court denied the petition to correct the award and confirmed the arbitration award of $1,437,808.08 to Pierotti. However, the court did not award postarbitration, prejudgment interest.

Torian has appealed from this judgment to the extent it awarded attorney fees to Pierotti. Pierotti has filed a cross-appeal challenging the denial of prejudgment, postarbitration interest.

II

DISCUSSION

A. *We Have No Power to Review the Attorney Fees Award.*

In *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th 1 (*Moncharsh*), our Supreme Court made it clear that the grounds for judicial review of a contractual arbitration award are extremely limited. Under *Moncharsh*, we cannot review the merits of the controversy, the arbitrator's reasoning, or the sufficiency of the evidence supporting the award. (*Id.* at p. 11.) Even "an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review." (*Id.* at p. 33.) Code of Civil Procedure sections 1286.2 and 1286.6 provide the only grounds for challenging an arbitration award. (3 Cal.4th at p. 33.)

In reviewing a judgment confirming an arbitration award, we must accept the trial court's findings of fact if substantial evidence supports them, and we must draw every reasonable inference to support the award. (*Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1344-1345 [19 Cal.Rptr.2d 215]; *Ikerd v. Warren T. Merrill & Sons* (1992) 9 Cal.App.4th 1833, 1841 [12 Cal.Rptr.2d 398].)

■ Reduced to its essence, Torian's claim on appeal is that the arbitrator erred by finding Pierotti was the prevailing party under the partnership agreement's attorney fees clause. However, this is nothing more than an attack on the "arbitrator's reasoning" or, at best, an assertion of "an error of law apparent on the face of the award."[3] *(Creative Plastering, Inc. v. Hedley Builders, Inc.* (1993) 19 Cal.App.4th 1662, 1665-1667 [24 Cal.Rptr.2d 216].)

Although Torian attempts to characterize the arbitrator's actions as in excess of his "powers,"[4] he is simply wrong on this point. There is no question the arbitrator had the power to award attorney fees, since the partnership agreement (which also contained the arbitration clause) expressly granted him that power. The only question here is whether he exercised that power correctly.

In *Creative Plastering Inc. v. Hedley Builders, Inc., supra*, 19 Cal.App.4th 1662, Division Five of this district considered facts that are extremely similar to those in this case. There, two contractors entered a contract with an attorney fees clause. The arbitrator awarded one of the parties his attorney fees. Following arbitration, the losing party appealed, arguing that the arbitrator exceed his powers because the party to whom he awarded attorney fees "could not legally and factually be the 'prevailing party' in the underlying action." (19 Cal.App.4th at p. 1665.) Although the trial court agreed with this argument, the Court of Appeal reversed. The reviewing court stated that "the lower court erred because it lacked the authority to reverse or modify the arbitrator's prevailing party finding, which constituted a ruling on an issue the arbitrator was authorized to decide." (*Id.* at p. 1666.)

---

[3]This is not to say that we agree with Torian's legal argument. To the contrary, the broad language of the attorney fees clause ("The prevailing party shall be entitled to reasonable attorneys' fees and costs associated with the enforcement of their rights through arbitration . . . .") seems to us sufficiently broad to permit the award of fees even where the plaintiff prevailed on a claim that was related to, but not a direct violation of, the partnership agreement. But even if we disagreed with the arbitrator's decision, we would have no power to correct such legal error on appeal.

[4]Code of Civil Procedure section 1286.2, subdivision (d) provides that a court can vacate an arbitration award where "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision . . . ." Section 1286.6, subdivision (b) provides that an arbitrator can correct an arbitration award where "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision . . . ."

In *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*) the Supreme Court delineated "the standard for measuring the scope of the arbitrators' authority." (*Id.* at p. 366.) There the high court held "the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers." (*Id.* at p. 372.) However, courts retain the authority to overturn arbitration awards "as beyond the arbitrator's powers, whether for an unauthorized remedy or [a] decision on an unsubmitted issue." (*Id.* at p. 375; see also *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 275 [52 Cal.Rptr.2d 115, 914 P.2d 193].)

There is absolutely no evidence the award of attorney fees was an unauthorized remedy or that the arbitrator decided an unsubmitted issue. Indeed it seems to us extremely disingenuous for Torian to have asked the court to compel Pierotti to arbitrate both of his claims pursuant to the arbitration clause in the partnership agreement, and to now claim the arbitrator had no authority to grant complete relief for one of those claims.

As Justice Crosby has observed: "Arbitrators do not exceed the scope of their authority because they erroneously decide a contested issue of fact or law; the parties' expectation of finality from a binding arbitration requires that 'judicial intervention in the arbitration process be minimized.' ([*Moncharsh*], *supra*, 3 Cal.4th at p. 10.) To avoid the extra delay, uncertainty, and costs of judicial review, we refrain from substituting our judgment for the arbitrator's; in close cases, the award must stand." (*Caro v. Smith, supra,* 59 Cal.App.4th 725, 735.)

In Justice Crosby's immortal words: "This case is not close." (*Caro v. Smith, supra,* 59 Cal.App.4th at p. 735 [concluding that arbitrator clearly had power to award statutory attorney fees].)

Moreover, while this case was pending, the Supreme Court decided closely related issues in *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782 [94 Cal.Rptr.2d 603, 996 P.2d 706] and *Moshonov v. Walsh* (2000) 22 Cal.4th 771 [94 Cal.Rptr.2d 597, 996 P.2d 699]. In *Moshonov*, the high court held that where an arbitrator's *denial* of attorney fees to a prevailing party rests on the arbitrator's interpretation of a contractual provision within the scope of the issues submitted for binding arbitration, the arbitrator has not "exceeded [his or her] powers." (*Moshonov, supra,* 22 Cal.4th at p. 773.) Similarly, in *Moore v. First Bank of San Luis Obispo*, the high court considered whether a binding arbitration award may be judicially

corrected to award a party attorney fees that the arbitrator declined to provide. (*Moore v. First Bank of San Luis Obispo, supra,* 22 Cal.4th at p. 782.) The court concluded it could not be corrected, holding that "[w]here the entitlement of a party to attorney fees . . . is within the scope of the issues submitted for binding arbitration, the arbitrators do not 'exceed . . . their powers' . . . by denying the party's request for fees, *even where such a denial would be reversible legal error if made by a court in civil litigation.*" (*Id.* at p. 784, italics added.) Both *Moshonov* and *Moore* approvingly cite and rely on *Creative Plastering, Inc. v. Hedley Builders, Inc., supra,* 19 Cal.App.4th 1662, which we have discussed *ante.* (*Moshonov* at p. 777; *Moore* at p. 788.) Although this case (and *Creative Plastering*) deals with the award (rather than denial) of attorney fees, *Moore* and *Moshonov* clearly indicate that the arbitrator did not exceed his powers in this case as well.

Torian places heavy reliance on *Thompson v. Jespersen* (1990) 222 Cal.App.3d 964 [272 Cal.Rptr. 132], a case decided before *Moncharsh* and *Advanced Micro Devices.* In *Thompson,* the arbitrator awarded attorney fees in a case where the contract providing for arbitration did not *contain an attorney fees clause.* (*Id.* at pp. 966-967.) The Court of Appeal reversed, on the ground that "[t]o uphold an award of attorney's fees in the absence of an agreement to arbitrate [the attorney fees] issue would result in gross unfairness . . . ." (*Id.* at p. 968.)

By contrast, in this case the contract containing the arbitration clause also contained a clause stating that "[T]he prevailing party shall be entitled to reasonable attorneys' fees and costs associated with the enforcement of their rights through arbitration." Thus, unlike the situation in *Thompson,* the partnership contract specifically contemplates that the arbitrator would have the authority to award attorney fees to the prevailing party in the arbitration.[5] Who is the prevailing party is a mixed question of law and fact, and we simply have no power to second-guess the arbitrator's decision on that issue. (*Creative Plastering, Inc. v. Hedley Builders, Inc., supra,* 19 Cal.App.4th at pp. 1665-1666.)

In sum, the trial court properly confirmed the arbitration award and denied Torian's motion to correct the award.

B. *The Cross-appeal.*

In his petition to confirm the arbitration award, Pierotti specifically asked the court to award interest that had accrued between the time the arbitrator

---

[5]See *Advanced Micro Devices, supra,* 9 Cal.4th at page 369; see also *Swift Industries, Inc. v. Botany Industries, Inc.* (3d Cir. 1972) 466 F.2d 1125, 1135-1136 (upholding an award of attorney fees, as a matter of contract interpretation within the authority of the arbitrator, *despite the lack of any explicit reference to fees in the parties' agreement* or the American Arbitration Association rules).

issued his award and the time the trial court issued its judgment confirming the award (postaward, prejudgment interest). In the trial court, Torian did not specifically contest Pierotti's right to postaward, prejudgment interest, although he did contest his right to attorney fees. The superior court granted Pierotti's petition to confirm the arbitration award, but, without explanation, it failed to award postaward, prejudgment interest. Pierotti filed a cross-appeal challenging this denial of postaward, prejudgment interest.

In his petition to confirm, Pierotti claimed he was entitled to postaward, prejudgment interest under Civil Code section 3287, subdivision (a). That section provides in pertinent part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." In an action on a contractual obligation, a party is entitled to prejudgment interest under this provision "as a matter of right." (*Leff v. Gunter* (1983) 33 Cal.3d 508, 520 [189 Cal.Rptr. 377, 658 P.2d 740]; *Rabinowitch v. Cal. Western Gas Co.* (1967) 257 Cal.App.2d 150, 160 [65 Cal.Rptr. 1]; *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376 [120 Cal.Rptr. 749].)

In *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085 [40 Cal.Rptr.2d 700] (*Britz*), the court held that a successful party to arbitration is entitled to postaward, prejudgment interest under Civil Code section 3287, subdivision (a). The *Britz* court held that a successful party to an arbitration is entitled to "recover damages certain" within the meaning of section 3287, subdivision (a) on the date the arbitrator renders his award. (34 Cal.App.4th at p. 1106.) The court noted that "[t]he arbitration award itself result[s] in a new and fixed liability [citation]. Regardless of the individual elements that comprised that liability, respondents were entitled to payment of the fixed sum upon issuance of the award. [¶] . . . . Although the interest was pre-'judicial judgment,' it was post-'contractual judgment.' Any result that denied respondents this postaward interest would punish them for using arbitration instead of the court system to resolve their dispute with appellants." (*Id.* at p. 1107.)

*Britz* controls this case. The court erred when it failed to award postaward, prejudgment interest under Civil Code section 3287, subdivision (a).

Although Torian does not contest the substantive law we have outlined above, he contends that postaward, prejudgment interest should be denied for procedural reasons.

First, he contends the arbitrator specifically denied a request for prejudgment interest. However, in our view, the arbitrator never considered or ruled

on the precise issue that Pierotti raises here: whether he is entitled to interest under Civil Code section 3287, subdivision (a) for the period between the award and the time the court entered judgment confirming the award. Pierotti made that request for the first time in his petition to confirm the award. We simply do not believe the issue was before the arbitrator, or that he decided the issue.[6] Here, Pierotti is not asking for an award of interest "upon the unliquidated contract claims [that were before the arbitrator] . . . but solely upon the arbitration award from the date of the award." (*Britz, supra,* 34 Cal.App.4th at p. 1106.)

Second, Torian contends Pierotti "invited error" because he requested postaward, prejudgment interest pursuant to the discretionary provisions of Civil Code section 3288, as well as under the mandatory provisions of section 3287, subdivision (a). The contention is nonsensical. Pierotti did not invite error by merely citing authority in addition to the statute that mandated the award of postaward, prejudgment interest. ■ As our Supreme Court has recently reiterated: "The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citations.] At bottom, the doctrine rests on the purpose of the principle, which prevents a party from misleading the trial court and then profiting therefrom in the appellate court. [Citations]." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [87 Cal.Rptr.2d 453, 981 P.2d 79].) We refuse to hold that Pierotti induced or misled the trial court to err merely by citing alternative grounds for his request for postaward, prejudgment interest.

■ In sum, the trial court was required to award postaward, prejudgment interest. (Civ. Code, § 3287, subd. (a).)

C.  *Sanctions on Appeal.*

We come, finally, to the issue of sanctions on appeal.

Pierotti filed a separate motion for sanctions, as the Rules of Court require. (Cal. Rules of Court, rule 26(e).) We sent a notice to Torian and his attorneys noting that we were considering imposing sanctions against them. (*Ibid.*) Torian filed an opposition in which he contends this appeal raises an issue of "first impression" because the attorney fees clause was contained in a different contract than the one he allegedly breached.

---

[6]It appears to us the issue before the arbitrator was actually whether Pierotti was entitled to pre-award interest. The arbitrator denied that request, and Pierotti does not contest that decision on appeal.

Pierotti asks for a minimum of $26,000 in sanctions, in addition to his attorney fees and costs on appeal. We conclude this request is reasonable. We also impose additional sanctions, payable to the clerk of this court, for the cost of processing this appeal.

Pierotti proposes two grounds for sanctions on appeal. First, he contends Torian's attorneys violated the Rules of Court by repeatedly and blatantly failing to provide record citations to "factual" statements in their briefs. Second, Pierotti contends this appeal is frivolous and that Torian took it solely for the purpose of delay. (Cal. Rules of Court, rule 26(e); Code Civ. Proc., § 907; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].) The record supports both contentions.

### 1. *Infraction of the Rules Governing Appeals.*

■ We may impose monetary sanctions for " 'any unreasonable infraction of the rules governing appeals . . . as the circumstances of the case and the discouragement of like conduct in the future may require.' " (*Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 884-886 [271 Cal.Rptr. 513]; see also Cal. Rules of Court, rule 26(e); *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 96-97 [31 Cal.Rptr.2d 264].)

It is axiomatic that an appellant must support all statements of fact in his briefs with citations to the record (Cal. Rules of Court, rule 15(a)) and must confine his statement "to matters in the record on appeal." (Cal. Rules of Court, rule 13.) Torian's attorneys have violated these rules with abandon.

To understand the extent of the attorneys' violation in this case, it is necessary to understand the limited nature of the record on appeal. Although the arbitration hearing consumed 28 days, the entire record on appeal consists of a 149-page clerk's transcript. There are no reporter's transcripts, and neither side requested that any exhibits be transmitted to this court (Cal. Rules of Court, rule 10(d)). The only real facts in the record are found in the arbitrator's 22-page interim decision and his four-page award.

Nevertheless, Torian's opening brief contains an 18-page statement of facts that is laced with ad hominem (and unsupported) attacks on Pierotti and the other plaintiffs.

For example, Torian's counsel begin their 11-page description of the "move in claim" with a single global citation to eight pages of the arbitrator's interim decision. Torian's counsel do not provide a single additional record cite for 11 pages. In this discussion, counsel assert numerous prejudicial facts, none of which are supported by the arbitrator's interim decision.

For example, Torian's counsel claim that: (1) Pierotti had been criticized in numerous dealer reports; (2) The incompetence of Pierotti's general manager (who was also Pierotti's stepson) was "a big reason for Pierotti Motors' demise"; (3) Pierotti's new manager, Fletcher, "fleeced Val Strough, one of Defendant's friends"; (4) Pierotti "deliberately deceived all of his manufacturers for years"; (5) Pierotti "submitted fraudulent financial statements on a monthly basis"; (6) Pierotti failed to pay his general contractor for the construction of his building at the auto mall; and (7) Pierotti "admitted to various frauds."

There is not a single statement in the arbitrator's interim decision that supports these charges.

In addition, Torian's counsel quote long passages from the partnership agreement and another agreement between the partnership and the City of Fremont. However, neither agreement is part of the record on appeal. Nor are the full passages quoted in the interim decision.[7] If Torian's counsel wished to rely on these passages, it was incumbent upon them to make the pertinent agreements part of the record on appeal and to provide appropriate record citations.

Torian's counsel continue their egregious violation of court rules in their description of "The Commission Claim." Once again, at the beginning of the description they provide a single global citation to seven pages of the interim decision. They then write for six pages without providing a single additional citation. Again, many of the facts they recite simply find no support in the interim decision. Among other things, they (1) describe the other dealers' financial condition and ability to purchase the land; (2) claim the size of an alternative parcel was a disadvantage; (3) describe the preferred design of an auto mall; (4) claim that the dealers' downtown property could be sold for nearly four times more than they would have to pay for property at the new auto mall; and (5) claim that none of the dealers expressed dissatisfaction upon learning of the hidden 3 percent commission.

This is only a partial list of the facts Torian's counsel relate without any support in the record. However, it is sufficient to establish their utter disregard for the rules that an appellant must support all statements of fact in his briefs with citations to the record (Cal. Rules of Court, rule 15(a)) and must confine his statement "to matters in the record on appeal." (Cal. Rules of Court, rule 13.) Torian's opening brief makes a mockery of those rules.

If it were not bad enough that Torian's counsel ignored these rules in the opening brief, they compound the unreasonable infraction of the rules by

---

[7]The portions of the attorney fees and arbitration clauses we have quoted were taken verbatim from the arbitrator's interim decision.

asserting additional unsupported facts in the appellant's reply brief and cross-respondent's brief. They do this after Pierotti's respondent's brief specifically pointed out the infractions contained in the opening brief. Among other things, Torian's counsel assert (or reassert) in the reply brief and cross-respondent's brief that (1) the original letter of understanding to purchase the Catellus land did not have an attorney fees clause; (2) an alternative property was not purchased because it was "economically unfeasible"; and (3) the other dealers "did not care" about Torian's commission agreement with Catellus. Again, none of these statements find support in the record. (*Alicia T. v. County of Los Angeles, supra*, 222 Cal.App.3d at p. 885 ["We consider the failure to comply with these rules in [appellant's] opening brief to be compounded and unreasonable when, after the respondents pointed out these errors, counsel for [appellants] violated the same rules in the reply brief."].)

### 2. *The Appeal Is Frivolous and Was Taken for an Improper Purpose.*

■ In addition to warranting sanctions for procedural reasons, the appeal is also sanctionable because it lacks substance and was taken for an improper purpose. We conclude that, based on all the facts before us, the appeal is frivolous and was taken solely for the purpose of delay or to harass the opposing party.

Code of Civil Procedure section 907 provides that "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." Rule 26(a) of the California Rules of Court similarly provides that "[I]f the appeal is frivolous or taken solely for the purpose of delay . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require." The California Supreme Court has held an appeal is frivolous "only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 650.)

We believe Torian's appeal is frivolous under the *Flaherty* standard. The extremely limited scope of review of arbitration decisions is now firmly established. (*Advanced Micro Devices, supra,* 9 Cal.4th 362; *Moncharsh, supra,* 3 Cal.4th 1.) Moreover, there is a case out of this very district addressing the precise issue Torian raised here. In *Creative Plastering*, the court unequivocally held we "lack[] the authority to reverse or modify the

arbitrator's prevailing party finding, which constituted a ruling on an issue the arbitrator was authorized to decide." (*Creative Plastering, supra,* 19 Cal.App.4th at p. 1666.) Torian does not even cite—much less attempt to distinguish—*Creative Plastering.*[8] There is absolutely no question the arbitrator was authorized to decide who was the prevailing party within the meaning of the attorney fees clause.

Given the facts and controlling legal authority, we believe "any reasonable attorney would agree that th[is] appeal is totally and completely without merit." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650; see also *Caro v. Smith, supra,* 59 Cal.App.4th at p. 739 ["The appeal from the judgment following the order confirming the arbitration award lacks even arguable merit."].) Indeed, given Torian's appellate counsels' utter failure to discuss the most pertinent legal authority (*Creative Plastering*), and their preparation of a grossly inadequate record, we conclude they knew as much, and subjectively prosecuted the appeal for an improper purpose. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶ 11:104, pp. 11-27 to 11-28 [frivolous nature of appeal provides evidence it was prosecuted for improper reason].)[9]

Indeed, the tone of counsels' brief suggests it was more cathartic than tactical. However, an opening brief is not an appropriate vehicle for an attorney to "vent his spleen" after losing at an arbitration hearing.[10] This is because, once the brief is filed, both the opponent and the state must expend resources in defending against and processing the appeal. Thus, an unsupported appellate tirade is more than just words on paper; it represents a

---

[8]This despite the fact Pierotti cited *Creative Plastering, Inc. v. Hedley Builders, Inc., supra,* 19 Cal.App.4th 1662 in his respondent's brief, described it for the better part of a page, and then stated "the instant case falls under *Creative Plastering, Inc.,* because a fee clause indisputably exists and respondents have expressly been found to be the prevailing parties thereunder."

[9]We note that the Supreme Court's decision to issue written (albeit brief) opinions disposing of related issues does not change our conclusion that the instant appeal was frivolous *or* taken for the purposes of harassment or delay. First, the court's recent decisions deal with the arbitrator's power to *deny* attorney fees where they were clearly warranted by law, and thus, to that extent, might be at least arguably distinguishable from *Creative Plastering.* (*Moore v. First Bank of San Luis Obispo, supra,* 22 Cal.4th 782.) By contrast, this case involved a decision to grant attorney fees by determining who was a prevailing party and is clearly controlled by *Creative Plastering.* Moreover, we emphasize that this case involves an element of procedural misbehavior that was lacking in *Moore* and *Moshonov, supra,* 22 Cal.4th 771. Again, Torian prepared a completely inadequate record, failed to cite or discuss the most pertinent authority, and attempted to assassinate Pierotti's character based on facts that find no support in the record. Thus, it is this combination of substantive frivolousness *and* procedural misconduct that causes us to conclude Torian took this appeal solely for the purpose of delay or harassment, not because of any good faith belief in the validity of the appeal.

[10]As a leading appellate treatise has noted about a similar case, "[I]n actuality, the appeal in [*Caro v. Smith, supra,* 59 Cal.App.4th 725] was motivated solely by the lawyer's displeasure with the arbitrator's award of attorney fees." (Eisenberg et al., Cal. Practice Guide: Civil

real cost to the opposing party and to the state. In 1992, for example, the Fourth District calculated the cost to the state of processing an "average" civil appeal to be $5,908.26. (*Cohen v. General Motors Corp.* (1992) 2 Cal.App.4th 893, 897 [3 Cal.Rptr.2d 619].) The court in *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1621 [26 Cal.Rptr.2d 786], noted "[s]urely the cost to process an average appeal has risen since [1992]." Thus, such an outburst, when committed to the pages of an opening brief, becomes an expensive proposition for all those concerned. Justice requires that those costs fall on the person (or persons) who unreasonably caused them.

In his written opposition to the motion for sanctions, Torian suggests the issue this case presents is one of "first impression" because "the cases are not dispositive on the issue of an arbitrator's jurisdiction to award attorney's fees when there is more than one contract at issue covering different time periods." However, this argument ignores the plain language of the attorney fees clause at issue, which provides "[t]he prevailing party shall be entitled to reasonable attorneys' fees and costs *associated with the enforcement of their rights through arbitration . . . .*" The clause focuses on the arbitration process, not the substantive rights that are litigated therein. In light of the great deference we must accord arbitral decisions on appeal, Torian has failed to convince us that this appeal is anything but frivolous.

### 3. *Appropriate Amount of Sanctions.*

Pierotti has requested we award him $26,000 in sanctions and that we also award his attorney fees and costs on appeal. We agree that the amount of requested sanctions is appropriate, and perhaps even generously low. In addition, we impose an additional $6,000 in sanctions to be paid to the clerk of this court to compensate the state for the cost of processing this appeal.

We impose a penalty for a frivolous appeal for two basic reasons: to discourage further frivolous appeals, and to compensate for the loss that results from the delay. (*In re Marriage of Economou* (1990) 223 Cal.App.3d 97, 107 [272 Cal.Rptr. 673] [$30,000 in total sanctions].) We note that in this case we are also imposing sanctions on two separate bases. First, because Torian's counsel unreasonably violated the Rules of Court in preparing his briefs, and second because the appeal was substantively frivolous. In our view, the procedural violations also support our conclusion that this appeal was frivolous or taken for the purposes of delay or harassment.

Among the specific factors we may consider in determining the appropriate amount of sanctions are the amount of respondent's attorney fees on

Appeals and Writs, *supra*, ¶ 11:110.3a, p. 11-33, italics omitted.) The same could be said about the present case.

appeal; the amount of the judgment against appellant; the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶¶ 11:136, 11:137, 11:138, 11:141, 11:141.1, pp. 11-42 to 11-43, and cases there cited.)

Here, Pierotti's counsel has filed a declaration in which he states Pierotti has incurred "over $26,000 of fees and costs" in responding to Torian's appeal and response to the cross-appeal. Thus the requested sanctions ($26,000) approximate the amount Pierotti will spend in defending this frivolous appeal.

Next, the amount of the judgment against Torian ($1,437,808) warrants substantial sanctions on appeal. Even if we consider the fact Torian has only appealed from the portion of the judgment awarding attorney fees, the amount of attorney fees awarded below—$363,512—itself justifies the imposition of substantial sanctions. The $26,000 Pierotti has requested is less than 2 petcent of the entire judgment and only about 7 percent of the contested attorney fee award. This is well within the ratios the courts have found appropriate. (*Caro v. Smith, supra*, 59 Cal.App.4th at pp. 729-730, 739 [$12,250 in sanctions on appeal awarded where arbitrator awarded $331,111 in compensatory damages and attorney fees in the sum of $59,500]; *Cosenza v. Kramer* (1984) 152 Cal.App.3d 1100, 1102-1103 [200 Cal.Rptr. 18] [total of $3,000 in sanctions imposed based on plaintiff's "legitimate obligation of $1,450"]; *Hersch v. Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1008, 1013 [194 Cal.Rptr. 628] [$125,000 in sanctions imposed for dilatory appeal taken from a judgment permitting the recovery of a deficiency of approximately $1 million]; *In re Marriage of Economou, supra*, 223 Cal.App.3d at pp. 100, 102-103, 108 [total of $30,000 in appellate sanctions imposed in marriage case involving dispute concerning $87,272.83].)

Third, we believe this case exhibited a relatively high degree of frivolousness. As the *Caro* court observed: "This case is not close." (*Caro v. Smith, supra*, 59 Cal.App.4th at p. 735 [concluding that arbitrator clearly had power to award statutory attorney fees].) Moreover, we note we are awarding sanctions in this case not only to punish Torian and his counsel for filing a frivolous appeal, but also to punish counsel for unreasonably violating the procedural rules on appeal. Thus, higher sanctions are appropriate as we are addressing two separate (yet interrelated) wrongs.

Finally, we note there is a particular need to discourage like conduct in the future because this appeal was taken from a judgment confirming an

arbitration award. The primary purpose of arbitration is to provide a " 'speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh, supra,* 3 Cal.4th at p. 9; *Schlessinger v. Rosenfeld, Meyer & Susman* (1995) 40 Cal.App.4th 1096, 1105 [47 Cal.Rptr.2d 650].) "Having chosen arbitration over civil litigation, a party should 'reap the advantages that flow from the use of that nontechnical, summary procedure.' " (*Schlessinger v. Rosenfeld, Meyer & Susman, supra,* 40 Cal.App.4th at p. 1105, italics omitted.) By filing a frivolous appeal from a judgment confirming an arbitration award, a party defeats the very purpose of the arbitration process. (See *ibid.*)

In sum, we conclude Pierotti's request for $26,000 in sanctions is reasonable and supported by the record. We impose these sanctions in addition to the appellate attorney fees Pierotti is already entitled to under the terms of the attorney fee clause in the partnership agreement. We will remand the matter to the trial court to determine the appropriate amount of appellate attorney fees under the attorney fees clause and to award them to Pierotti.

However, Pierotti "is not the only person aggrieved by this frivolous appeal. Those litigants who have nonfrivolous appeals are waiting in line while we process the instant appeal." (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1451 [77 Cal.Rptr.2d 463].) "In the same vein, the appellate system and the taxpayers of this state are damaged by what amounts to a waste of this court's time and resources. (See generally, *Bennett* v. *Unger* (1969) 272 Cal.App.2d 202, 211 [77 Cal.Rptr. 326]; cf. Cann, *Frivolous Lawsuits—The Lawyer's Duty to Say 'No'* (1981) 52 U.Colo. L.Rev. 367, 368-369 [discussing the social cost of frivolous appeals].) Accordingly, an appropriate measure of sanctions should . . . compensate the government for its expense in processing, reviewing and deciding a frivolous appeal. (. . . Eisenberg, [Sanctions on Appeal: A Survey and a Proposal for Computation Guidelines (1985)] 20 U.S.F. L.Rev. at p. 33.)" (*Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 17-18 [244 Cal.Rptr. 581], quoted in *In re Marriage of Schnabel* (1994) 30 Cal.App.4th 747, 755 [36 Cal.Rptr.2d 682].)

Because a frivolous appeal, or one taken for improper reasons, harms the court, not just the respondent, a growing number of courts are ordering appellants to pay sanctions directly to the court clerk to compensate the state for the cost of processing such appeals. (See *Westphal v. Wal-Mart Stores, Inc.* (1998) 68 Cal.App.4th 1071, 1083 [81 Cal.Rptr.2d 46]; *Los Angeles County Dept. of Children etc. Services v. Superior Court* (1995) 37 Cal.App.4th 439, 457 [43 Cal.Rptr.2d 757]; *Simonian v. Patterson* (1994) 27 Cal.App.4th 773, 788 [32 Cal.Rptr.2d 722] [$4,000 of a total of $50,000 in

sanctions made payable to the clerk of the court]; *Collisson & Kaplan v. Hartunian, supra,* 21 Cal.App.4th 1611, 1621 [$10,000 payable to the clerk of the court]; *Papadakis v. Zelis* (1992) 8 Cal.App.4th 1146, 1150 [11 Cal.Rptr.2d 411] [$20,000 in total sanctions; $10,000 payable to the clerk of the court]; *Cohen v. General Motors Corp, supra,* 2 Cal.App.4th 893, 897 [sanction to be paid both to respondent and the clerk]; *City of Bell Gardens v. County of Los Angeles* (1991) 231 Cal.App.3d 1563, 1574 [283 Cal.Rptr. 91] [$25,000 payable to the clerk of the court]; *Alicia T. v. County of Los Angeles, supra,* 222 Cal.App.3d at p. 887; *Bank of California v. Varakin* (1990) 216 Cal.App.3d 1630, 1640 [265 Cal.Rptr. 666] [$25,000 payable to clerk of the court]; *Bach v. County of Butte* (1989) 215 Cal.App.3d 294, 312-313 [263 Cal.Rptr. 565]; *Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 135-137 [260 Cal.Rptr. 369]; *Finnie v. Town of Tiburon, supra,* 199 Cal.App.3d 1, 17.)

The most recent estimate we have found of the cost to the state of processing an average civil appeal is $5,908.26. That estimate appears in a 1992 case. (*Cohen v. General Motors Corp., supra,* 2 Cal.App.4th at p. 897.) While the cost of processing the average civil appeal has probably risen since then, (*Collisson & Kaplan v. Hartunian, supra,* 21 Cal.App.4th at p. 1621) we err on the side of caution and impose sanctions of only $6,000 payable to the clerk of this court to compensate the state for the cost of processing this frivolous appeal.

### 4. The Sanctions Should Be Shared Equally by Torian and His Appellate Counsel.

■ The final issue we must consider in imposing sanctions is who should pay them. We may order a litigant, his attorney, or both to pay sanctions on appeal. (*In re Marriage of Schnabel, supra,* 30 Cal.App.4th 747, 755.)

There is no question Torian's counsel on appeal—David Jay Morgan and Batya F. Smernoff—bear considerable responsibility for the sanctions on appeal. Business and Professions Code section 6068, subdivision (c) states, in pertinent part, that it is an attorney's duty "[t]o counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just . . . ."[11] Indeed, sanctions may be assessed solely against a lawyer who had a professional obligation not to pursue an appeal because it was so totally

---

[11]In addition, rule 3-200 of the California State Bar Rules of Professional Conduct provides: "A member shall not seek, accept, or continue employment if the member knows or should know that the objective of such employment is: [¶] (A) To bring an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the

lacking in merit. (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 996 [245 Cal.Rptr. 463]; *In re Marriage of Schnabel, supra,* 30 Cal.App.4th at p. 756.) Sanctions against counsel are particularly appropriate here because we are also punishing a violation of the procedural rules on appeal, for which counsel, not their client, must accept primary responsibility.

However, Torian is not blameless. He initiated the appeal and benefited from the delay. (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1080 [275 Cal.Rptr. 594]; *In re Marriage of Schnabel, supra,* 30 Cal.App.4th at p. 756.) It appears he has not yet paid the attorney fees the arbitrator ordered and he has had use of this substantial sum while Pierotti was forced to bide his time in this unnecessary postarbitration procedure. In these circumstances, we conclude Torian and his counsel should each pay sanctions.

III

DISPOSITION

The matter is remanded to the trial court to calculate and award post-award, prejudgment interest to Pierotti as part of the judgment. In all other respects the judgment is affirmed.

On remand, the trial court is also to determine the amount of attorney fees Pierotti expended in defending against this frivolous appeal, and shall order Torian to pay such sum to plaintiffs.

Finally, as sanctions for bringing this frivolous appeal and unreasonably violating the California Rules of Court, Torian shall pay $13,000 to plaintiffs and $3,000 to the clerk of this court. Likewise, Attorneys David Jay Morgan and Batya F. Smernoff are jointly and severally liable to pay $13,000 to plaintiffs and $3,000 to the clerk of this court. The clerk of this court is directed to deposit said sums in the general fund. All sanctions shall be paid no later than 15 days after the date the remittitur is filed.

Attorneys David Jay Morgan, Batya F. Smernoff, and the clerk of this court are *each* ordered to forward a copy of this opinion to the State Bar

---

purpose of harassing or maliciously injuring any person; or [¶] (B) To present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of such existing law."

upon return of the remittitur. (Bus. & Prof. Code, §§ 6086.7, subd. (c), 6068, subd. (o)(3); *Caro v. Smith, supra,* 59 Cal.App.4th at p. 740.)

Cross-appellants (Pierotti et al.) are awarded costs on appeal.

McGuiness, P. J., and Walker, J., concurred.