Filed 2/24/15  Vaillancourt v. Panahpour CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| ANDRE VAILLANCOURT, | B254559 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SC100818) |
| v. | |
| ALIREZA PANAHPOUR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa Hart Cole, Judge.  Affirmed as modified.

Fink & Steinberg and S. Keven Steinberg for Defendant and Appellant.

David J. Wilzig for Plaintiff and Respondent.

_____

In the underlying action, the trial court ordered the entry of a default against appellant Alireza Panahpour, D.D.S. (Dr. Panahpour) as a sanction for discovery abuse, and issued a default judgment for $273,506 to respondent Andre Vaillancourt. Dr. Panahpour contends that the discovery sanctions were improper and that the damages awarded were excessive. We conclude that the default judgment contains an improper award in the amount of $500, and reject Dr. Panahpour's remaining contentions. We therefore modify the judgment to strike the improper award of $500, and affirm the judgment as modified.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. *Events Surrounding Commencement of Underlying Action*

On December 3, 2008, Vaillancourt initiated the underlying action against Dr. Panahpour. Later, on December 19, 2008, Dr. Panahpour filed a petition for chapter 7 bankruptcy protection (11 U.S.C. § 701 et seq.).

In the underlying action, Vaillancourt's first amended complaint, filed February 24, 2009, asserted claims against Dr. Panahpour for dental malpractice, failure to secure informed consent, battery, and misrepresentation.[1] According to the complaint, without Vaillancourt's informed consent, Dr. Panahpour performed dental surgery on him, and did so in a negligent manner, resulting in serious permanent physical injuries to Vaillancourt.[2] The complaint sought compensatory damages for medical expenses, lost earnings, and loss of earning capacity.

---

[1] Also named as defendants were Robert Jones and Cavitat Medical Technologies, Inc., who are not parties to this appeal.

[2] As the record lacks a copy of the first amended complaint, we hereby augment the record to include it. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

On March 30, 2009, in the bankruptcy proceeding, Vaillancourt requested a determination regarding the dischargeability of his claims against Dr. Panahpour. In June 2010, the bankruptcy court denied Dr. Panahpour a discharge.

Later, in August 2010, the trial court in the underlying action granted Dr. Panahpour's motion to compel arbitration. In October 2011, after Dr. Panahpour declined to participate in the arbitration, the court vacated its order compelling arbitration. Trial in the underlying action was set for April 2, 2012, with a discovery cut-off date of March 2, 2012.

B. *Vaillancourt's Discovery Motions*

In January 2012, Vaillancourt filed an ex parte application and a motion to compel discovery. He requested an order directing the deposition of Dr. Panahpour, who had cancelled his noticed deposition on five occasions between March 2009 and January 2012. In addition, Vaillancourt sought an order compelling Dr. Panahpour to respond to requests for the production of documents. Vaillancourt maintained that despite numerous requests, Dr. Panahpour had provided no documents regarding Vaillancourt's treatment other than copies of some x-rays, which had been produced in July 2008. Both the ex parte application and the motion requested monetary sanctions.

On January 24, 2012, the trial court ordered Dr. Panahpour to appear for a deposition within five business days, but awarded no sanctions. Three days later, on January 27, Dr. Panahpour's counsel, S. Keven Steinberg, filed a substitution of counsel stating that Dr. Panahpour was proceeding in propria persona. Dr. Panahpour failed to appear at his court-ordered deposition, which had been set for January 30, 2012.

On February 22, 2012, the trial court granted Vaillancourt's motion to compel the production of documents, and ordered Dr. Panahpour to produce responsive documents within ten days. In addition, the court awarded Vaillancourt $1,693 in sanctions.

C. *Vaillancourt's First Motion for Terminating Sanctions*

On February 22, 2012, the date on which the court granted Vaillancourt's motion to compel the production of documents, Vaillancourt filed a motion for the imposition of monetary, issue, or terminating sanctions, contending that Dr. Panahpour had engaged in significant discovery misconduct, including violation of the court's order directing him to appear for deposition in January 2012. Vaillancourt argued that Dr. Panahpour's failure to comply with the order, coupled with other discovery abuse, was sufficient to justify terminating sanctions.

Dr. Panahpour filed no opposition on his own behalf. Steinberg, his former counsel, submitted a declaration asserting that terminating sanctions were inappropriate.

On March 16, 2012, following a hearing, the trial court determined that although Dr. Panahpour's conduct was sufficiently egregious to support terminating sanctions, their imposition would be a "futile exercise," as it appeared that Vaillancourt had served no timely statement of damages on Dr. Panahpour. The court ruled that issue sanctions were appropriate, and directed Vaillancourt to prepare a proposed order regarding issue sanctions. In addition, the court directed Dr. Panahpour to pay $2,470 in sanctions.

D. *Dr. Panahpour's Second Chapter 7 Bankruptcy Proceeding*

On March 22, 2012, Vaillancourt submitted a proposed order regarding issue sanctions. The proposed order directed that the key facts concerning Dr. Panahpour's misconduct, as alleged in the first amended complaint, "be taken as established at the time of trial."

On March 28, 2012, before the trial court ruled on the proposed order, Dr. Panahpour filed a second petition for chapter 7 bankruptcy protection. The following day, attorney James R. Selth, who represented Dr. Panahpour in the bankruptcy proceeding, filed a notice of the bankruptcy stay in the underlying action. In July 2012, Vaillancourt initiated an action in the bankruptcy proceeding to determine the dischargeability of his claims against Dr. Panahpour.

In November 2012, after Dr. Panahpour failed to appear at a case management conference in the underlying proceeding, the trial court issued an order to show cause why Dr. Panahpour's answer to the first amended complaint should not be stricken. A hearing on the order to show cause was set for January 14, 2013.

On January 11, 2013, Steinberg and his law firm substituted back in as Dr. Panahpour's counsel, and filed a brief in response to the order to show cause. Steinberg maintained that Dr. Panahpour had received insufficient notice of the case management conference he failed to attend. In addition, Steinberg argued that bankruptcy law precluded Dr. Panahpour from appearing at the conference, asserting that the underlying action was subject to the bankruptcy stay, and the trial court lacked jurisdiction over Vaillancourt's claims. Steinberg stated: "[T]his case has been and still remains stayed. To the extent there remains any non[]dischargable claims after the bankruptcy proceedings, this [c]ourt may again regain jurisdiction . . . . [¶] Based on this, [Dr.] Panahpour did not and could not

5

attend [the] Status Conference . . . ." Steinberg did not mention the bankruptcy proceeding that Dr. Panahpour initiated in 2008 or the fact that Dr. Panahpour had been denied a discharge in that proceeding.

The hearing on the order to show cause was continued to February 15, 2013. In late January 2013, Vaillancourt requested that the hearing on the order to show cause be vacated, as a trial on his claims had been ordered in the bankruptcy proceeding. In February 2013, the court discharged the order to show cause.

In August 2013, in the bankruptcy proceeding, Vaillancourt and Dr. Panahpour entered into a stipulation that Vaillancourt's claims against Dr. Panahpour were nondischargeable, and were to be resolved in the underlying action. Shortly afterward, the bankruptcy court approved the stipulation.


E. *Vaillancourt's Second Motion for Terminating Sanctions*

On August 21 and 27, 2013, Vaillancourt served a statement of damages on Dr. Panahpour identifying damages totaling $268,260. Later, on September 10, 2013, Vaillancourt filed a motion for monetary and terminating sanctions Vaillancourt argued: "[Dr. Panahpour] and his attorneys have engaged in a long history of discovery abuse, including . . . [his] willful violation of a court order requiring him to appear at deposition . . . , [his] willful violation of a separate court order to produce documents and pay a monetary sanction[,] and [Dr. Panahpour's] and his attorneys' persistent attempts to perpetuate a fraud on this [c]ourt by failing to advise the [c]ourt . . . that [his] previously filed bankruptcy proceeding was dismissed by the [b]ankruptcy [c]ourt on the basis of fraud . . . ."

Supporting Vaillancourt's motion and his reply to Dr. Panahpour's opposition were declarations from Vaillancourt's counsel, David J. Wilzig, who

6

stated that Dr. Panahpour had never appeared for the deposition ordered on January 24, 2012, had produced no documents in response to the February 22, 2012 order, and had not paid the monetary sanctions included in the latter order. Wilzig also stated that the bankruptcy proceeding Dr. Panahpour initiated in 2008 was dismissed due to fraud. Accompanying the declarations was a copy of a bankruptcy court notice dated December 16, 2009, reflecting that Dr. Panahpour had been denied a discharge.

Dr. Panahpour opposed the motion on several grounds. He maintained that it constituted an improper motion for reconsideration, arguing that the prior motion had been denied for want of a timely statement of damages, and that Vaillancourt could not properly "revive" that motion by filing a statement of damages months later. Dr. Panahpour further maintained that Vaillancourt was fully aware of both bankruptcy proceedings, as he had participated in them. Dr. Panahpour contended that he made no misleading representations to the trial court regarding its jurisdiction during the second bankruptcy proceeding, asserting that the bankruptcy court "did not release jurisdiction over to the [s]uperior [c]ourt until . . . August [] 2013." Supporting Dr. Panahpour's opposition was a declaration from Steinberg, who stated: "it is believed that Dr. Panahpour voluntarily attended his deposition in this case while he was in pro per. However, as Dr. Panahpour is out of the country, my firm has been unable to confirm this."

On October 2, 2013, following a hearing, the trial court granted the motion for terminating sanctions and ordered Dr. Panahpour's answer stricken. The court stated: "Terminating sanctions are properly imposed for a course of abusive litigation conduct. [Citation.] . . . [Vaillancourt] sufficiently establishes that, in addition to the conduct at issue in the prior terminating sanctions motion, [Dr. Panahpour's] bankruptcy proceeding was filed strategically. Specifically,

7

[he] concealed that the filing of a 2008 bankruptcy proceeding was dismissed for fraud, which is a material fact particularly relevant in reference to the March 2012 bankruptcy. . . . [¶] Moreover, not only has [Dr. Panahpour] still not appeared for deposition, [d]efense counsel inexplicably attempts to argue compliance based on a 'belief' that [his] client appeared in pro per and that the belief cannot be confirmed because [Dr. Panahpour] is out of the country.  Defense counsel's argument based on pure speculation, and which counsel knows is pure speculation, is in itself an abuse of the litigation process.  In addition, [Dr. Panahpour] has still not produced any of the documents the [c]ourt ordered produced.  Each of these orders were in place prior to the bankruptcy stay and [Dr. Panahpour] made no overtures to comply after . . . the stay was clearly lifted."

Although the court's tentative ruling on the motion also awarded Vaillancourt $500 in monetary sanctions, the court's final ruling denied his request for monetary sanctions.

F.  *Default Judgment*

In January 2014, Vaillancourt filed his "prove[]up" packet in support of a default judgment.  He identified damages totaling $776,886, including $99,640 for economic loss and $672,000 for noneconomic loss.  Vaillancourt also sought $583 in costs and $4,663 in purportedly unpaid monetary sanctions.  His request for unpaid sanctions included the sanctions totaling $4,163 awarded in connection with his motion to compel the production of documents and his first motion for terminating sanctions, as well as the $500 in sanctions that the court tentatively awarded, but ultimately denied, in connection with his second motion for terminating sanctions.  Included in the "prove up" packet were declarations from

8

Vaillancourt and several experts regarding the nature and extent of Vaillancourt's injuries, and financial documents regarding his medical expenses.

On January 23, 2014, the trial court entered a default judgment for $273,506 in favor of Vaillancourt and against Dr. Panahpour. The judgment awarded Vaillancourt $268,260 in damages, $583 in costs, and $4,663 in "[a]ttorney fees." This appeal followed.

## DISCUSSION

Dr. Panahpour contends the trial court abused its discretion in granting Vaillancourt's second motion for terminating sanctions and entering the default judgment. As explained below, we conclude that the default judgment improperly included the $500 in monetary sanctions that the trial court had denied in granting terminating sanctions, but otherwise reject Dr. Panahpour's contentions.

A. *Governing Principles*

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process,'" including terminating sanctions (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991, quoting Code Civ. Proc., § 2023.030).[3] Misuses of the discovery process include the following: "(d) Failing to respond or submit to an authorized method of discovery. [¶] (e) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (f) Making an evasive response to discovery. [¶] (g) Disobeying a court order to provide discovery." (§ 2023.010.) Terminating sanctions may take the form of

---

[3] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

9

"[a]n order rendering a judgment by default against [the offending] party."
(§ 2023.030, subd. (d)(4).)

"'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.'" (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36, quoting *Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 904.) The trial court may order a terminating sanction for discovery abuse "after considering the totality of the circumstances: [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246.) Generally, "[a] decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279-280.) Under this standard, trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders. (*Lang v. Hochman*, *supra*, 77 Cal.App.4th at pp. 1244-1246 [discussing cases].)

When the trial court's exercise of its discretion relies on factual determinations, we examine the record for substantial evidence to support them. (*Waicis v. Superior Court* (1990) 226 Cal.App.3d 283, 287; see *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 929.) In this regard, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which

10

will support the determination [of the trier of fact] . . . ." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics deleted.)

B. *Ruling on Second Motion for Terminating Sanctions*

Under the standards discussed above, we discern no error in the trial court's ruling on Vaillancourt's second motion for terminating sanctions. In suitable circumstances, noncompliance with a single discovery order, coupled with a persistent failure to respond to discovery requests, is sufficient to support terminating sanctions. (*Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, 1614-1618.) Vaillancourt established that at the time of the ruling, Dr. Panahpour had never complied with either of two separate discovery orders, and that he had effectively failed to respond to Vaillancourt's repeated efforts to obtain discovery. In addition, as explained below, Vaillancourt showed other circumstances supporting the inference that Dr. Panahpour had willfully attempted to impede discovery.

To begin, the trial court correctly found that Dr. Panahpour and his counsel, in opposing the motion for terminating sanctions, engaged in an abusive tactic. Dr. Panahpour opposed the motion on the basis of a declaration from his counsel, who offered what counsel admitted was mere speculation that Dr. Panahpour had voluntarily submitted to a deposition, notwithstanding Vaillancourt's evidence that Dr. Panahpour had not done so. Such a declaration was improper, as a lawyer's signature on a filed document constitutes a certification that the document's factual contentions "have evidentiary support or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation . . . ." (§ 128.7, subd. (b)(3); see *Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441; *Murphy v. Yale Materials Handling Corp.* (1997) 54 Cal.App.4th 619, 622-623.)

11

Moreover, the record supports the court's finding that the bankruptcy proceeding initiated in March 2012 was filed "strategically" to impede discovery. While the underlying action was stayed due to the 2012 bankruptcy proceeding, Dr. Panahpour never disclosed to the trial court that he had been denied a discharge in his prior bankruptcy proceeding -- which commenced *after* the underlying action -- due to fraud. As the trial court noted, the denial of a discharge was a "material fact."

Under federal bankruptcy law, "the effect of having a discharge denied is harsh: it renders all the debts/claims which *could have been included in the petition* forever nondischargeable in bankruptcy, thereby subjecting the debtor's assets and future income to all claims of such creditors." (*In re Halishak* (Bankr. N.D.Ohio 2005) 337 B.R. 620, 625, italics added; 11 U.S.C. § 523(a)(10).) Furthermore, the nondischargeability of a debt or claim due to the prior denial of a discharge is not subject to the exclusive jurisdiction of federal bankruptcy courts; that issue may be resolved in a state court, provided that the automatic stay arising from filing a bankruptcy petition is inapplicable to the state action, or is modified by the federal bankruptcy court to permit the state action. (See *In re Franklin* (Bankr. E.D.Cal. 1995) 179 B.R. 913, 923-926.)

Here, Dr. Panahpour never informed the court that he had been denied a discharge in his initial bankruptcy proceeding, and instead argued to the court that it lacked jurisdiction over Vaillancourt's claims against him. Dr. Panahpour's lack of candor regarding his initial bankruptcy proceeding, coupled with the fact that he filed the 2012 bankruptcy proceeding immediately before the court ruled on Vaillancourt's proposed order regarding issue sanctions, raises the reasonable inference that he acted "strategically" to impede discovery. In sum, the record discloses ample grounds to support the imposition of terminating sanctions.

12

C.  *Dr. Panahpour's Contentions*

Dr. Panahpour's principal contention is that the trial court, in ruling on Vaillancourt's first motion for terminating sanctions, was required to enter a default judgment awarding no damages to Vaillancourt due to his failure to serve a timely statement of damages.  Dr. Panahpour argues that the court, after determining that terminating sanctions were appropriate, improperly decided to award issue sanctions on the ground that Vaillancourt had not served a timely statement of damages.  For the reasons discussed below, we discern no error in the ruling on the first motion for terminating sanctions.

"In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason."  (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988.)  Generally, "[t]he penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery."  (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793 (*Deyo*).)

In concluding that the imposition of terminating sanctions would be a "futile exercise," the trial court appears to have reasoned -- correctly -- that Vaillancourt's failure to serve a timely notice of damages precluded the entry of a default judgment awarding damages.  Generally, subdivision (a) of section 580 provides that "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ."  As our Supreme Court has explained, "the primary purpose of th[at] section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them."  (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.)  The requirement is applicable in cases in which the defendant's default is ordered as a discovery sanction.

13

(*Greenup v. Rodman*, *supra*, 42 Cal.3d at p. 829; *Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1175 (*Electronic Funds Solutions*).)

The notice requirement is nonetheless subject to an exception applicable to the complaint in the instant action.  Under section 425.10,  subdivision (b), a complaint in an action for personal injury may not state the amount of damages.  In such cases, section 425.11, subdivision (b), permits the service of a notice on the defendant stating the amounts of the plaintiff's compensatory damages.  Under section 580, subdivision (a), that notice establishes the maximum amount of a default judgment against the defendant, if properly served before the entry of default.  (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1520-1521; see *Electronic Funds Solutions*, *supra*, 134 Cal.App.4th at p. 1177; *Sole Energy Co. v. Hodges* (2005) 128 Cal.App.4th 199, 206, fn. 4.)  Thus, Vaillancourt's failure to serve a timely statement of damages barred the entry of a default judgment awarding damages.

In our view, the trial court's decision to impose issue sanctions in lieu of terminating sanctions cannot be regarded as an abuse of discretion.  Under the standards described above, the issue sanctions imposed here were "appropriate to the dereliction" and necessarily not excessive, as terminating sanctions were also appropriate.  (*Deyo*, *supra*, 84 Cal.App.3d at p. 793.)  Furthermore, the court's choice of sanctions promoted the goals of discovery sanctions, namely, "to prevent abuse of the discovery process and correct the problem presented . . . ."  (*McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210-211.)  The court imposed issue sanctions because imposing terminating sanctions would have required the entry of a default judgment awarding no damages -- that is, a judgment favorable to Dr. Panahpour, notwithstanding his discovery abuse.  Under the circumstances, the

imposition of terminating sanctions would have *rewarded*, rather than prevented, abuse of the discovery process.

In a related contention, Dr. Panahpour maintains that the trial court, in granting Vaillancourt's second motion for terminating sanctions, effectively permitted Vaillancourt to reassert his first motion for terminating sanctions and cure its defects. In support of his contention, he argues that the ruling on the second motion for terminating sanctions was erroneous because the two motions were predicated on the same misconduct.

That argument fails in light of the record, which establishes that Vaillancourt's second motion relied on misconduct not asserted in the first motion. Generally, after a motion for terminating sanctions is denied, the trial court may grant a second motion for terminating sanctions based on other misconduct, even though the court is asked to consider the additional misconduct "against the backdrop" of the earlier discovery abuse. (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1291.) Here, the record discloses that the second motion was predicated on additional misconduct sufficient in itself to support terminating sanctions.

As the trial court noted, the second motion was "based on the conduct that was presented on the prior motion, *in addition to* [Dr. Panahpour's] continuing refusal to comply with the discovery orders issued prior to the bankruptcy stay, [his] failure to apprise the [c]ourt completely of all relevant facts in connection with the bankruptcy stay and [his] questionable motive in filing bankruptcy . . . ." (Italics added.) The second motion thus relied in part on Dr. Panahpour's noncompliance with a discovery order not related to the ruling on Vaillancourt's first motion for terminating sanctions, namely, Dr. Panahpour's failure to comply with the February 22, 2012 order directing the production of documents: that

15

order was issued the same day Vaillancourt filed his first motion; neither party mentioned it in his papers relating to the first motion, and the trial court did not refer to it in ruling on the first motion. Because noncompliance with a single discovery order may warrant terminating sanctions, the second motion identified new misconduct sufficient to support those sanctions.

Dr. Panahpour also argues that the ruling on the second motion amounted to a "nunc pro tunc order" that "wrongfully cured Vaillancourt's error in failing to specify damages in his [c]omplaint and his failure to timely file a [s]tatement of [d]amages . . . ." We disagree. To the extent Dr. Panahpour suggests that Vaillancourt was obliged to state the amount of damages in the first amended complaint, he is mistaken: as we have explained, subdivision (b) of section 425.10 barred Vaillancourt from making any such statement in the complaint because his action was for personal injury (see *Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 432 [under section 425.10, subdivision (b), action for housing discrimination that primarily sought damages for emotional and mental distress constituted action for personal injury]). Furthermore, the trial court correctly found that Vaillancourt served a timely statement of damages in connection with the second motion, as the record discloses that the statement of damages was served over a month before the court ruled on the second motion. (See *Schwab v. Southern California Gas Co.* (2004) 114 Cal.App.4th 1308, 1323 [defendant had adequate notice of claimed damages when served with statement of damages 15 days prior to entry of default].)

Relying on the arguments discussed above, Dr. Panahpour contends the $273,506 award in the judgment was excessive as a matter of law. We reject his challenge to the amount of the award, with the exception of the $500 in monetary sanctions included in the award relating to the second motion for terminating

16

sanctions. In an action for personal injuries, a default judgment may include damages not exceeding the amount specified in the statement of damages, as well as costs and unpaid discovery sanctions. (See *Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275, 1284-1294.) Here, Vaillancourt's statement of damages identified damages totaling $268,260. In addition, his "prove[]up" packet requested $583 in costs, and offered evidence that Dr. Panahpour had failed to pay monetary sanctions totaling $4,663, including $500 in sanctions that the packet mistakenly described as awarded in connection with Vaillancourt's second motion for terminating sanctions. In entering the default judgment, the court awarded $268,260 in damages, $583 in costs, and $4,663 in "[a]ttorney fees." Those amounts were proper, with the exception of the inclusion of the $500 in monetary sanctions that the court had, in fact, denied. The judgment must therefore be modified to eliminate that error.[4]

---

[4]    In a related contention, Dr. Panahpour suggests that the award of damages could not exceed $250,223, pointing to a document entitled "Request for Court Judgment" that Vaillancourt filed in connection with his "prove[]up" packet. Although Vaillancourt's statement of damages specified damages totaling $268,260 and his "prove up" packet sought a judgment for approximately $776,000 in damages, the "Request of Court Judgment" asked for the entry of a judgment for $250,223 in damages and costs. As Dr. Panahpour offers no argument (with citation to appropriate legal authorities) that the "Request of Court Judgment" limited his liability for damages, he has forfeited that contention. (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 404, fn. 10.)

17

## DISPOSITION

The judgment is modified to reduce the "attorney fees" awarded to $4,163, and affirmed as modified.  Vaillancourt is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

18